[Crim. No. 13762. Second Dist., Div. Five. June 7, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ARNOLD FRANKLIN ROWLAND, Defendant and Appellant.

Raymond H. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Ronald F. Russo, Deputy Attorneys General, for Plaintiff and Respondent.

AISO, J. pro tem.*—Defendant Arnold Franklin Rowland was convicted of an assault with a deadly weapon (Pen. Code, § 245) by a court, sitting without a jury. Sentenced to state prison, he appeals from the judgment of conviction.

### APPELLANT'S CONTENTIONS

The crux of the defendant's contentions of error is that by erroneous exclusion of relevant evidence, the trial court thwarted his counsel's attempt to put on an adequate defense. The theory of the defense was that defendant was warding off a homosexual advance by the alleged victim and prosecution witness, Leon Fricke, and that the gun was accidentally discharged by Fricke's grabbing it. The line of questioning stopped by the trial court consisted of attempts to

---

. *Assigned by the Chairman of the Judicial Council.

elicit testimony from a defense witness that Fricke was an aggressive homosexual as relevant to a claim of acting in self-defense.

## THE EVIDENCE

Leon Fricke, the prosecuting witness, testified to the following: He lived in Altadena and worked as a barber at People's Barber Shop, located at 2279 North Lake in Altadena. He was married and the father of three children. On the evening in question, August 23, 1966, he had not been drinking. Shortly after midnight, he drove down to a pizza parlor located next door to and approximately 15 feet away from the Honey Bunny nightclub on Woodbury Road in Altadena. He went for the purpose of getting some pizza. He parked his car in a gas station located across the street from the pizza parlor. He crossed the street and found the pizza parlor closed.

At the time, four men were standing in front of the Honey Bunny club. They approached him. Defendant Rowland asked which way Fricke was going. Fricke replied, "Toward Fair Oaks." Rowland then asked for a ride. After walking across the street and getting into Fricke's car, the two drove off towards Fair Oaks.

When they reached the corner of Fair Oaks and Woodbury, Fricke told Rowland that that was as far as he was going, that he was going home. Rowland wanted Fricke to take him downtown towards Washington Boulevard. When Fricke refused, Rowland became upset, pulled a gun from his belt, and said, "Now, you are going to take me downtown." Fricke refused and pulled his car into a service station located on the northeast corner of Woodbury and Fair Oaks. "[T]hat is when he [defendant] shot me, in front of the service station." A bullet passed through Fricke's right calf. At the time of the shooting, defendant told Fricke, "I told you so." "It was because I [Fricke] didn't take him downtown." Fricke was not armed. He did not hit the defendant. He denied upon cross-examination that he had ever propositioned Rowland during the ride or that he had put his hand on Rowland's leg.

According to Fricke, defendant jumped out of the car following the shooting, ran about 50 feet, and fired another shot. This shot did not hit Fricke. The defendant ran easterly down Woodbury. Fricke identified a gun as looking like the weapon with which he had been shot.

By stipulation of counsel, a transcript of the testimony of an absent witness, Raymond Johnson, given at the prelimi-

nary hearing was received into evidence.[1] Johnson had testified that he was employed at Bill's Self-Service gasoline station at the corner of Woodbury and Fair Oaks around midnight on August 23, 1966. He first saw Fricke in a car. Then he saw another person leave the vehicle and "head" easterly. He heard a loud explosion which he assumed to be a firecracker. He did not hear any such explosion while the two persons were still in the vehicle. He was not sure of the identity of the person who exited from the car, but the defendant appeared similar to such person. He saw the defendant Rowland in a police car within 10 to 15 minutes after the incident.

Donn Berrier was called as the People's next witness and he testified: He was on duty the night of August 23, 1966 as a deputy sheriff of Los Angeles County. He first noted Fricke, when Fricke whistled and waved to the patrol car in which Berrier was riding. Fricke was at Bill's service station, 2186 North Fair Oaks. He observed that Fricke had a "hole" about 4 inches below his right knee, which was bleeding, and another "hole" above his ankle bone on the inside portion of the leg. He called for another sheriff's unit for assistance, obtained a description of his assailant from Fricke, and then went in search of the person described.

About 12:20 or 12:30 a.m., he spotted the defendant walking south on Summit Avenue. Defendant then appeared to observe Berrier and his partner officer, started running, and later turned into 2121 North Summit Avenue and ran up the driveway. Shortly thereafter, defendant was found hiding in the ivy on the north side of the premises. The gun introduced into evidence was found in an adjacent vacant lot about 20 feet north of where defendant was hiding. Berrier was able to see live ammunition and an empty shell which had been fired in the gun. The gun and "bullets" were turned over to the detectives assigned to the case.

After Berrier had advised defendant of his constitutional rights, defendant denied the shooting. "He denied any shooting . . . He denied the gun. He . . . told us that a colored fellow had picked him up at Washington and Fair Oaks, and traveled a short ways and proceeded to hit him in and about his head and that is the last thing he remembered until we got

---

[1]This transcript of the preliminary hearing was not brought up by counsel as part of the appeal record. We took judicial notice of the same after it was lodged with this court. (Evid. Code, § 452, subd. (d); *Flores* v. *Arroyo* (1961) 56 Cal.2d 492 [15 Cal.Rptr. 87, 364 P.2d 263].)

him.'' Berrier was unable to see any signs of injury on the defendant.

Defendant testified: He had just come out from the Honey Bunny nightclub and was waiting for a ride. He wanted to get down to Washington and Fair Oaks. Fricke asked him if he wanted a ride. Defendant replied, ''yes,'' indicating that he intended going down Fair Oaks towards Washington Boulevard.

As they drove down Woodbury and approached Fair Oaks, Fricke was driving in the lane to the right. Defendant told Fricke to get over to the center lane to turn down Fair Oaks. Fricke pinched the inside of defendant's thigh about halfway between the knee and the hip, and then said, '' 'Oh, let's ride a little bit,' just like that, and I didn't say anything to him. When we got to the lights, I said, 'Wait a minute. Just let me out,' just like that. We had completely stopped . . . He played like he didn't hear me, so I pulled the gun out, and the only reason that he got shot is because he grabbed the gun. He grabbed it with one hand and he was driving with the other hand, and he went up in the gas station and the gun went off. He didn't know he was shot.''

The defendant did not intend to shoot Fricke or to harm him. Asked, ''What was your intention when you pulled the gun?'', defendant replied, ''Just let me out of the car, nothing else. I didn't know what he was going to do.''

Defendant got out of the car and started running. He stumbled and the gun went off accidentally again. He didn't know that the car following him was a police car, but he was running, threw the gun away, and went behind some bushes to hide. He admitted on cross-examination that he had not been truthful with the officers because they had not advised him of his right to remain silent, ''almost snapped [his] head out of the car,'' grabbed him by the hair of his head, and were ''trying to trick him.''

The defense then called a Carl Petway as a witness. He testified that he was the manager of the Honey Bunny nightclub on East Woodbury in Altadena and vaguely recalled having seen Fricke once or twice in the club, remembering just his face. Then the following transpired:

''[DEFENSE COUNSEL]: Did you observe his actions at the time that he was in your bar?

''[PROSECUTOR]: That is objected to upon the ground that it would be immaterial.

''THE COURT: Sustained.

"[DEFENSE COUNSEL] : Do you know Mr. Fricke's reputation in the area of that bar as to whether or not he is a homosexual or appears to be one?

"[PROSECUTOR] : That is objected to upon the ground that he is not competent to so testify.

"THE COURT: Sustained.

"[DEFENSE COUNSEL] : Did you observe Mr.—this may have been objected to—Did you observe Mr. Fricke's actions and appearance on the times that he was in the bar, as far as whether or not he approached other males in the bar?

"[PROSECUTOR] : That is objected to upon the ground that it is immaterial.

"[DEFENSE COUNSEL] : It is for the purpose of showing, your Honor, this witness' knowledge of the appearance of the victim as to whether or not he appeared to be a homosexual.

"[PROSECUTOR] : I don't know how you can tell by appearance. That is objected to upon the ground that it is not proper.

"THE COURT: Sustained.

"[DEFENSE COUNSEL] : Did you have a person who acted as a bouncer there at your club?

"A. At one time, Yes, I did.

"Q. What was his name?

"A. Bruce Banks.

"Q. Were you there when it was necessary for Mr. Banks to evict Mr. Fricke from your bar?

"[PROSECUTOR] : That is objected to upon the ground that it is immaterial.

"THE COURT: Sustained.

"[DEFENSE COUNSEL] : I feel, your Honor—I will make an offer of proof that whether or not Mr. Fricke appeared to be a homosexual might have some corroborative value in this matter. That would be the only testimony that we might have as to the attitude or appearance of Mr. Fricke.

"THE COURT: Having been evicted from a bar, what does that have to do with whether he is a homosexual or not?

"[DEFENSE COUNSEL] : I think the reasons for the eviction might have some value.

"THE COURT: You might think the reasons are, but I can't assume those reasons or that it even happened. Objection sustained.

"[DEFENSE COUNSEL] : Nothing further, your Honor."

The People's counsel did not cross-examine and the defense

rested its case in chief. No rebuttal or sur-rebuttal evidence was offered. The clerk's transcript also reflects that on October 31, 1966 (almost three months before the trial on January 26, 1967), the court upon defendant's motion ordered the sheriff to deliver a "make sheet" on the victim Fricke to defense counsel.

## EVIDENCE REGARDING HOMOSEXUALITY IMPROPERLY EXCLUDED

We have a situation where the testimony of the only persons who are percipient witnesses to the happenings in the vehicle is in direct conflict as to the cause of the differences between them. Their credibility is therefore a critical issue.

Whether or not Fricke was a homosexual, particularly an aggressive one, bears not only on establishing defendant's claim of self-defense but also on his credibility. We do not say that a person's being a homosexual per se makes his testimony suspect. For such purpose, the evidence would have been inadmissible. (Evid. Code, § 786.) ▮ However, homosexuality or a homosexual relationship is admissible when it goes to prove bias, interest, or motive of a witness. (Evid. Code, § 780, subd. (f); *People* v. *Dukes* (1966) 241 Cal.App.2d 488, 492-493 [50 Cal.Rptr. 609]; *People* v. *Mullen* (1953) 115 Cal. App.2d 340, 342 [252 P.2d 19].) ▮ If Fricke was a homosexual and if he was trying to pickup a male partner, there would be a strong motive or interest to camouflage his deviate personality disorder and possibly a criminal act (Pen. Code, § 647, subds. (a), (b); *People* v. *Dudley* (1967) 250 Cal.App.2d Supp. 955 [58 Cal.Rptr. 557]; *People* v. *Belanger* (1966) 243 Cal.App.2d 654, 658 [52 Cal.Rptr. 660]) by giving testimony which would remove a possible complaining witness by causing the witness to be first convicted and incarcerated.

On the other hand, if the defendant were able to establish through the witness Petway either by way of his opinion or knowledge of Fricke's reputation that Fricke was a homosexual and by way of specific instances to prove that Fricke solicited other males in the bar and that it was necessary to evict him because of his solicitations or engaging in homosexual promiscuity (Pen. Code, § 647, subds. (a), (b); *People* v. *Dudley* (1967) *supra*), then the evidence would tend to prove that defendant was not making up a story out of whole cloth. Greater credence could then be given to defendant's testimony that Fricke was pinching the inside of defendant's thigh and soliciting him for homosexual purposes and that it

was Fricke's grabbing of the gun which caused it to discharge.

Apart from the issue of defendant's credibility, such evidence would bear more directly upon establishing that Fricke was engaged in aggressive homosexual conduct at the time the gun discharged. Section 1103 of the Evidence Code provides in part which is pertinent to this case: "In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101[2] if such evidence is: (a) Offered by the defendant to prove conduct of the victim in conformity with such character or trait of character . . ."

It has long been recognized that where self-defense is raised in a homicide case, evidence of the aggressive and violent character of the victim is admissible. Before the Evidence Code, the character trait could be shown by reputation evidence, but not by evidence of specific acts of the victim on third persons. (*People* v. *Davis* (1965) 63 Cal.2d 648, 656 [47 Cal.Rptr. 801, 408 P.2d 129]; *People* v. *Yokum* (1956) 145 Cal.App.2d 245, 259 [302 P.2d 406].) It is now permissible under section 1103 of the Evidence Code to prove the aggressive and violent character by specific acts of the victim on third persons. (*People* v. *Smith* (1967) 249 Cal.App.2d 395, 404-405 [57 Cal.Rptr. 508].)

Here the evidence of character was sought to establish that Fricke was of an aggressive homosexual character and from

[2]Evidence Code section 1101:

"(a) Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts.

"(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

Evidence Code section 1102: "In a criminal action, evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation is not made inadmissible by Section 1101 if such evidence is:

"(a) Offered by the defendant to prove his conduct in conformity with such character or trait of character.

"(b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)."

that fact to infer that he was making an aggressive homosexual advance towards defendant, which defendant had to ward off. Establishment of this fact is also interrelated with proving the credibility of defendant as a witness. (Evid. Code, § 780, subd. (i).)

 Although trial defense counsel's offer of proof is no paragon, there is enough in the record to show that he did make known to the court what he sought to prove by the witness Petway. In *People* v. *McGee* (1947) 31 Cal.2d 229, 242 [187 P.2d 706], the court stated: "Defendant made no formal offer of proof, but such offer was not necessary because the questions themselves, together with colloquies with the trial judge, in the light of previously introduced testimony, clearly disclose their purpose, and since they were directed to defendant's own witness they indicate that the answers were expected to be favorable to defendant." (See also Witkin, Cal. Evidence (2d ed. 1966), p. 1212.) The trial court sustained in most instances objections made upon untenable grounds. It is true that the trial court could not assume the happenings which defense counsel sought to adduce or the reasons for them. But it was prejudicial error to prevent defense counsel from proving those matters by the testimony which he sought to elicit from his witness Petway.

Exclusion of evidence bearing on the credibility of a prosecution witness where only he and the defendant are percipient witnesses has been held to be prejudicial error. (*People* v. *Mizer* (1961) 195 Cal.App.2d 261 [15 Cal.Rptr. 272].) There exists here also "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error has affected the result. But the fact that there exists at least such an equal balance of reasonable probabilities necessarily means that the court is of the opinion 'that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].)

The judgment is reversed.

Kaus, P. J., and Hufstedler, J., concurred.