The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Raymond T. MORGAN, Defendant-Appellant.

No. 82CA0241.

Colorado Court of Appeals, Div. I.

Jan. 5, 1984.

Rehearing Denied Feb. 2, 1984.

Certiorari Denied May 21, 1984.

Duane Woodard, Atty. Gen., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellee.

Gerash & Robinson, Scott H. Robinson, Denver, for defendant-appellant.

ENOCH, Chief Judge.

Defendant, Raymond T. Morgan, appeals his convictions of conspiracy to commit first degree murder and first degree murder. We affirm.

### I.

Defendant contends that the trial court erred in failing to dismiss the charges based on destruction of evidence by the prosecution. We disagree.

Evidence found at the scene included a severed fingertip, from which a fingerprint and blood samples were obtained and subsequently matched to defendant. The fingertip was later destroyed by the police. Applying the three-pronged test set forth

in *Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979), the trial court suppressed "the fingertip and all evidence relating thereto, of whatever kind or nature," and, finding that suppression was an adequate remedy, denied defendant's motion to dismiss.

 In fashioning a proper remedy for the loss or destruction of evidence, the trial court has broad discretion. *People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980). Where, as here, all the evidence relating to the fingertip was suppressed at trial, and defendant was not called upon to explain how, when, or where he lost his fingertip, failure to dismiss the charges did not deprive defendant of due process. *See People v. Reese,* 670 P.2d 11 (Colo.App.1983).

## II.

The defendant further contends that the trial court erred in denying his motion to dismiss for denial of speedy trial. We disagree.

After the trial court suppressed all evidence relative to the fingertip and all derivative evidence related thereto, its ruling was appealed by the district attorney to the Supreme Court which affirmed the trial court's findings and upheld the suppression order because of the absence of the transcript of the preliminary hearing. *See People v. Morgan, supra.* The defendant thereafter moved the trial court to clarify its suppression order. The trial court entered an order which did not depart from the first order, and the district attorney initiated a second interlocutory appeal based upon that order. *See People v. Morgan,* 619 P.2d 64 (Colo.1980). This second appeal was dismissed by the Supreme Court on the grounds that there was no new suppression order issued in the course of the clarification hearing. The defendant then moved the trial court for dismissal on the grounds that his statutory rights to a speedy trial had been violated because of the period of delay caused by the second appeal. The trial court denied this motion finding that the prosecution did not intentionally cause such a delay nor did it seek any delay to gain an unfair advantage over the defendant.

 The statutory provisions of § 18–1–405(6), C.R.S.1973 (1978 Repl.Vol. 8), and Crim.P. 48(b)(6)(I) provide that, in computing the time within which a defendant shall be brought to trial, the period of delay caused by an interlocutory appeal is to be excluded. In *People v. Ferguson,* 653 P.2d 725 (Colo.1982), the Supreme Court held that an original proceeding is equivalent to an interlocutory appeal and so long as it is initiated in good faith, the speedy trial statute is tolled. Applying this rationale, we hold that even a second interlocutory appeal, if initiated in good faith, tolls the statute regardless of the fact that it is later dismissed by the Supreme Court.

Here, the trial court found that the second appeal was in good faith and such a finding of fact, *see Hatfield v. Barnes,* 115 Colo. 30, 168 P.2d 552 (1946), will not be disturbed on appeal where there is, as here, supportive evidence in the record. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). Therefore, the trial court, in making its determination as to whether the speedy trial statute had been violated, properly excluded the delay caused by the second appeal.

## III.

Defendant further argues that his alleged incriminating statement should not have been admitted into evidence. We disagree.

The day after the shooting, which occurred in Denver, defendant was arrested in Colorado Springs. The following day, after having been transferred to the Denver City Jail, a police detective requested to speak with defendant. The detective gave defendant his *Miranda* warnings, and defendant stated that he understood each of these rights. Defendant then wrote "refuse to talk" on the printed advisement form next to the statement that the subject wishes voluntarily to talk to the police. When the detective then started to leave defendant stated, "I would like to know

what I'm in for, what I'm charged with, and if you can tell me what happened." In response, the detective explained in detail what the charges were and what evidence existed to establish the charges. After this explanation, defendant made the following statement, "I know I must have done it. I'd like to talk to you and get this cleared up, but I feel I should talk to my lawyer first." After this statement was made by defendant, the detective left without having asked any questions.

■■■ When an accused declines to answer questions or requests the presence of an attorney, all questioning of the accused must cease unless the accused himself initiates further communication, exchanges, or conversations with the police. Here, as in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the defendant initiated the further conversation with the detective. *See Oregon v. Bradshaw*, — U.S. —, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

Since the conversation was initiated by the defendant, the next issue is whether the detective's response to the defendant's questions constitutes custodial interrogation. Interrogation consists of either express questioning or its functional equivalent, *i.e.*, any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. Here, considering the circumstances, we conclude that the detective's statements regarding the charges and the evidence establishing the charges were not the functional equivalent of questioning.

Therefore, because defendant, after being properly advised of his rights, initiated a conversation with the detective and the detective's response was not custodial interrogation, the trial court did not err in admitting the defendant's statements into evidence. *See People v. Pierson*, 670 P.2d 770 (Colo.1983).

IV.

The defendant also argues that the destruction of rough notes of this interview with the detective denied him due process of law. We disagree.

After the interview, the detective returned to his office and made rough notes of the defendant's statements. These notes were later incorporated into a supplemental report. At a suppression hearing prior to trial, the detective was asked whether he still had these notes to which he responded in the affirmative. However, it was not until three years later, at the trial, that the defendant requested the notes which, unlike all the other rough notes made in the investigation, had been either lost or destroyed.

■■■ The state has a duty to employ regular procedures to preserve discoverable evidence such as rough notes of a defendant's statement. However, the destruction of the notes by itself does not constitute a violation of due process unless the evidence is constitutionally material. In the context of a completed trial, constitutional materiality means evidence which, when evaluated in light of the entire record, likely would have affected the outcome of the trial. *People v. Shaw*, 646 P.2d 375 (Colo.1982).

■■■ The record reveals that the notes were not made contemporaneously with the defendant's statement but contained only the detective's recollection of what the defendant had stated. The detective testified that the supplemental report was accurate. In addition, there is no indication that the notes contained anything favorable to the defendant, and the detective was vigorously cross-examined about any discrepancy between his testimony at the suppression hearing and his testimony at the trial regarding defendant's statement. Although we do not condone the destruction of rough notes made following an interview with a defendant, we find that, in light of the entire record, the evidence here was not constitutionally material, and therefore, the defendant was not denied due process.

V.

Defendant's final contention is that the trial court erred in failing to suppress the

bullets seized from the front yard of the residence where he lived with his mother and two other tenants. We disagree.

A few days after defendant's arrest, another detective was in defendant's neighborhood looking for a vehicle. Upon questioning neighbors, he learned that one evening, while it was still quite light, defendant had come out of his residence and, in front of witnesses, had shot bullets into the front lawn. The detective then went to the public sidewalk next to the residence and saw two furrows in the front lawn. He walked out on the lawn and, by putting his finger down one furrow, overturned the first bullet. The second bullet was later seized allegedly upon a tenant's consent.

The trial court found that defendant had no reasonable expectation of privacy with respect to the front lawn and did not suppress the bullets. We agree with the court's ruling.

 The application of the Fourth Amendment depends upon whether the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). This inquiry normally embraces two discrete questions. The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy" and the second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Smith v. Maryland, supra.*

Where, as here, a defendant openly, in daylight, and before witnesses, fires bullets into a front lawn, which is not enclosed, is open to public view, and is subject to access by other tenants of the residence, the defendant has not, by his conduct, exhibited an actual expectation of privacy with respect to the bullets. Therefore, in this case, defendant can assert no legitimate interest protected by the Fourth Amendment, and the trial court properly admitted the bullets in evidence.

Judgment affirmed.

SMITH and KELLY, JJ., concur.