The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Clinton R. ERICKSON, Defendant–
Appellant.

No. 92CA1201.

Colorado Court of Appeals,
Div. I.

April 7, 1994.

Rehearing Denied May 5, 1994.

Certiorari Denied Nov. 7, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Roger G. Billotte, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Gerash, Robinson & Miranda, P.C., Scott H. Robinson, Denver, for defendant-appellant.

Opinion by Judge BRIGGS.

Defendant, Clinton Richard Erickson, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree murder, theft, and first degree aggravated motor vehicle theft. Defendant contends that the trial court erred in excluding evidence of the victim's character and in failing to declare a mistrial because of a discovery violation and prosecutorial misconduct. We affirm.

## I.

Defendant first contends the trial court erred in refusing to permit certain testimony from a witness who had heard that the victim was bisexual. In the circumstances presented here, we disagree.

Defendant claimed at trial that, in response to his male roommate's attempt to sexually assault him, he attempted to repel the attack. In the ensuing struggle, the roommate was killed.

A defense witness testified that, although he personally did not know whether the victim was homosexual or bisexual, he had heard a rumor from two people that the victim was bisexual. The prosecutor objected, and the court heard argument in a side bar conference.

Defense counsel argued that the testimony was relevant as reputation evidence:

> I think the fact that there are rumors that he ... is bisexual ... makes it probative

and relevant that he may have attempted a homosexual rape of my client.

The prosecutor responded that the evidence was not relevant and, in any event, was not competent because no foundation had been laid to support its admission as reputation evidence. The court then permitted defense counsel to make an offer of proof.

The witness then testified, outside the presence of the jury, that he had been in Colorado for eight months and that his "main social scene" was going to a particular skating rink. Although he had not met the victim, the witness testified that "people tell me that he [the victim] goes there a lot." The questioning continued:

Q [Witness], let me ask you some questions about the statement you just made.

You've indicated that you heard rumors that [the victim] was what you—in your words—well, tell us what rumors you've heard about [the victim].

A That he's a little of both.

Q Both what?

A Homosexual.

Q That he was bisexual?

A Bisexual, excuse me. Yeah. Bisexual.

. . . .

Q Now, where did you hear these rumors?

A At the rink, skating rink.

Q When did you begin to hear them?

A When I go skating once in a while I just hear people around talk, say that he's both ways.

. . . .

Q How many people told you that?

A Two.

Q Two people at the rink?

A Right.

Q Who were those people?

A Just friends, skate there.

Q Who—what are their names?

A I don't know. People that I don't know.

The prosecutor did not request that the jury be instructed to ignore the testimony already given and the court gave no such instruction. However, the court found that such testimony was neither relevant nor competent reputation testimony. It thus refused to permit the witness to testify further regarding rumors he had heard.

■ It is not clear how the evidence presented in the offer of proof could have further bolstered defendant's claim beyond the testimony already presented. We conclude, in any event, that the court's ruling is not reversible error.

■ CRE 404(a)(2) provides that evidence concerning the character of the victim is admissible when offered to prove a pertinent trait of the victim's character. Moreover, we agree that when self-defense is raised in a trial for homicide, and thus a controversy arises over whether the deceased was the aggressor, character evidence of the victim may be relevant to corroborate the defendant's contention that he was attacked. *People v. Jones*, 675 P.2d 9 (Colo.1984). *See Evans v. United States*, 277 F.2d 354 (D.C.Cir.1960). *See also People v. Rowland*, 262 Cal.App.2d 790, 69 Cal.Rptr. 269 (1968) (where defendant claimed that he was acting in self-defense to ward off a homosexual sexual assault, whether the victim was a homosexual was relevant because it bore not only on defendant's claim of self-defense but also on his credibility).

However, CRE 405(a) further provides:
In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.

■ Reputation and rumor are distinguishable and differ in their probative value:
[R]eputation, i.e., the status resulting from the notoriety produced by a cumulation of the facts tending to prove the quality that a person enjoys in a family and in society, must be distinguished from rumor, which is loose talk which the community has not had an opportunity to evaluate and accept or reject. Mere uncorroborated rumor is not competent evidence. Rumor is as

much inferior in probative quality to hearsay as reputation is above it; consequently, as a rule, rumor is not relevant evidence to prove a particular fact, nor is testimony as to remarks and stories of neighbors, constituting generalized hearsay gossip.

*IMC Exploration Co. v. Henderson,* 419 So.2d 490, 506 (La.Ct.App.1982). *See Michelson v. United States,* 335 U.S. 469, 480, 69 S.Ct. 213, 220, 93 L.Ed. 168, 176 (1948) ("At its worst [evidence of reputation] opens a veritable Pandora's box of irresponsible gossip, innuendo and smear.").

Reputation and rumor can be distinguished in at least three respects relevant here.

■ The first difference between reputation and rumor, which pertains to the qualifications of the witness, has been aptly summarized by the United States Supreme Court:

> [T]he witness must qualify to give an opinion by showing such acquaintance with the [person characterized], the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded.

*Michelson v. United States,* 335 U.S. at 478, 69 S.Ct. at 219, 93 L.Ed. at 175. *See Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544 (10th Cir.1988). *See also State v. Denny,* 294 N.C. 294, 240 S.E.2d 437 (1978) (witness must have sufficient contact with the community to demonstrate knowledge of the general reputation held by an appreciable group of people who have had adequate basis upon which to form their opinion).

■ A second difference between rumor and reputation turns on whether it can be established that the opinion is held generally in the community:

> [R]eputation must be *general;* that is, the community as a whole must be agreed in their opinion, in order that it may be regarded as reputation. If the estimates vary, and public opinion has not reached the stage of definite harmony, the opinion cannot yet be treated as sufficiently trustworthy.

5 J. Wigmore, *Evidence* § 1612 at 584 (Chadbourn rev. 1974). *See Michelson v. United States, supra; Wisinski v. State,* 508 So.2d 504, 506 (Fla.Dist.Ct.App.1987) ("The reputation must be based on discussions among a broad group of people so that it accurately reflects the person's character, rather than the biased opinions or comments of two or three persons."); *State v. Buckner,* 214 N.W.2d 164, 169 (Iowa 1974) ("reputation testimony [must] be based on comments from a cross-section of the community as opposed to a narrow group or class ... to assure the reliability of the opinion"); *Commonwealth v. Boone,* 467 Pa. 168, 354 A.2d 898, 904 (1975) ("[R]eputation evidence is established by testimony of the *community* opinion of the individual in question, not through specific acts or mere rumor.").

■ Finally, evidence that a character trait currently is widely discussed in the community does not alone convert a rumor into a reputation.

> [Reputation] has been well described in a different connection as 'the slow growth of months and years, the resultant picture of forgotten incidents, passing events, habitual and daily conduct, presumably honest because disinterested.... It is for that reason that such general repute is permitted to be proven. It sums up a multitude of trivial details.

*Michelson v. United States,* 335 U.S. at 477, 69 S.Ct. at 219, 93 L.Ed. at 174–75. *See* 5 J. Wigmore, *Evidence, supra,* § 1611 at 583–84 ("[R]eputation implies the definite and final formation of opinion by the community; while rumor implies merely a report that is not yet finally credited.").

■ It is the responsibility of the trial court to ensure that an adequate foundation has been laid to support the introduction of reputation evidence. Only on a clear showing of prejudicial abuse of discretion will appellate courts disturb rulings of trial courts on this subject. *Michelson v. United States, supra. See also United States v. Watson,* 669 F.2d 1374, 1381 (11th Cir.1982) ("A trial court's determination that the foundation of a reputation witness is inadequate will ordinarily not be overturned on appeal."); *Unit-*

ed States v. Augello, 452 F.2d 1135 (2d Cir. 1971).

■ Here, defendant's offer of proof failed to establish that the witness could speak with authority on the terms in which the victim was regarded in the relevant community, that the opinion expressed by two unknown declarants was held generally in the community, or that their comments represented the definite and final formation of opinion in that community.

We therefore conclude that the trial court did not abuse its discretion in refusing to admit further testimony about the victim's sexual orientation as reputation evidence.

## II.

■ Defendant next contends that the trial court abused its discretion in denying a mistrial as a sanction for a discovery violation. Again, we disagree.

The defendant was arrested in California by a Los Angeles County sheriff's deputy. While transporting defendant to the station the police vehicle became disabled. The sheriff's deputy and defendant had to await assistance. During this time, the deputy and the defendant began to talk. The deputy advised defendant of his *Miranda* rights. Defendant admitted stabbing the victim, allegedly in response to an attempted sexual assault.

The deputy's report of the interrogation was provided to defense counsel before trial. However, during cross-examination at trial, the deputy disclosed for the first time that he had taken handwritten notes during the interrogation. Although the deputy did not recall destroying these particular handwritten notes, he confirmed they no longer existed. He testified that his normal procedure was to throw away his notes after writing the report. He also testified that the report given defense counsel accurately and precisely indicated what defendant had told him.

Defendant argues that the destruction of the notes deprived him of effective cross-examination of the deputy and materially affected his ability to defend against the charge of first degree murder, violating his right to due process of law. The trial court found that there had been no showing that the handwritten notes were constitutionally material and that defendant's due process rights had not been violated. We agree.

■ The prosecution's suppression of material evidence favorable to a defendant violates that defendant's right to due process of law. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); People v. Sheppard, 701 P.2d 49 (Colo.1985). And, when material evidence can be collected and preserved in the performance of routine procedures by state agents, the failure to do so is tantamount to suppression of the evidence. People v. Sheppard, supra.

■ However, the destruction of handwritten notes, made after interviewing the defendant and later incorporated into a report, does not by itself constitute a violation of due process unless the evidence is "constitutionally material." People v. Morgan, 681 P.2d 970, 973 (Colo.App.1984).

In People v. Greathouse, 742 P.2d 334 (Colo.1987), our supreme court adopted as appropriate under the Colorado constitution the meaning of "constitutionally material" applied in regard to the United States Constitution in California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Under either constitution, the evidence:

'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'

People v. Greathouse, supra, at 338. The focus then must be on the state's knowledge prior to the actual loss or destruction of evidence. People v. Greathouse, supra.

Here, there is no indication in the record that the handwritten notes contained any exculpatory value that was apparent before they were destroyed. Hence, without addressing whether the written report was "comparable evidence," we cannot say that the notes were constitutionally material. Their destruction therefore did not violate defendant's due process rights, and the trial court did not abuse its discretion in refusing

to declare a mistrial. *See People v. Greathouse, supra.*

### III.

 Finally, defendant asserts that certain remarks made by the prosecutor during the opening statement and closing arguments were improper and that the cumulative effect of these remarks entitles him to a new trial. We disagree.

Most of the prosecutor's statements challenged by defendant were proper comment on facts in evidence or were arguments for reasonable inferences that could be made from the evidence. *See People v. Rodriguez,* 794 P.2d 965 (Colo.1990). The remaining statements were corrected by appropriate instruction to the jury from the court. Absent a contrary showing, it is presumed the jury understood and heeded the trial court's instructions. *See People v. Valdez,* 725 P.2d 29 (Colo.App.1986).

While some comments by the prosecutor may have been ill advised, they did not, either individually or cumulatively, rise to the level of flagrant and persistent misconduct requiring reversal. *See People v. Pipkin,* 762 P.2d 736 (Colo.App.1988).

Judgment affirmed.

STERNBERG, C.J., and KAPELKE, J., concur.