The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Brice D. MILLER, Defendant–Appellant.**

No. 97CA1047.

Colorado Court of Appeals, Div. II.

Nov. 13, 1998.

Rehearing Denied Dec. 10, 1998.

Certiorari Denied Aug. 2, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Peter J. Cannici, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Brice D. Miller, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree murder. We affirm.

The defendant and the victim were former co-workers. Their paths crossed one afternoon while both men were hiking in a park. An altercation ensued and the defendant hit the victim in the head with a stone several times, resulting in the victim's death.

At trial, defendant claimed that he acted in self-defense because the victim was attempting to sexually assault him.

## I.

Defendant first contends that his conviction must be reversed because the trial court erred in excluding evidence of the victim's homosexuality. We disagree.

In his statement to police and in his testimony at trial, defendant stated that he hit the victim with a rock when the victim tried to force him to perform a homosexual act. Defendant filed a motion under the rape shield statute, §18–3–407, C.R.S.1998, and under CRE 404(b), seeking to present evidence relating to the victim's sexual orientation. He contended that, if the victim was homosexual, such evidence would be relevant because it would make it more likely that the homosexual advance had occurred.

Defendant offered several items of evidence that would buttress his contention that the victim was homosexual. According to a report filed with the Bozeman, Montana, police department in 1986, the victim had grabbed the crotch of another male and asked if that person wanted the victim to perform oral sex upon him. Second, the victim's widow had reportedly found a homosexual magazine in the victim's underwear drawer. Third, the widow had purportedly stated that the victim received sexual gratification "by other means," although the exact meaning of the phrase was unclear. Finally, the park where the victim and defendant met was purportedly known as a gathering place for homosexuals.

Except for inquiries concerning the park, which were admitted at trial without objection, the trial court ruled that the balance of the evidence would not be admissible. It relied upon the rape shield statute and *People v. Murphy,* 919 P.2d 191 (Colo.1996), in which the supreme court had held that evidence of a rape victim's sexual orientation has no bearing on his or her credibility or the issue of consent, and that the rape shield statute precludes evidence of sexual orientation. The trial court also held that the evidence was inadmissible under CRE 404(b).

## A.

■ Defendant asserts on appeal that the rape shield statute is not applicable here.

We agree, but conclude that the evidence proffered was nonetheless inadmissible under the theory presented on appeal.

■ A trial court is afforded considerable discretion in deciding questions concerning the admissibility of evidence, and absent an abuse of discretion, its evidentiary rulings will be affirmed. *People v. Ibarra,* 849 P.2d 33 (Colo.1993). An abuse of discretion occurs only when the court's ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Metcalf,* 926 P.2d 133 (Colo.App.1996).

In *People v. Murphy, supra,* the defendant was accused of perpetrating a homosexual rape. He sought to prove that the rape victim had consented to the activity, in part by seeking to introduce evidence of the victim's sexual orientation.

The court extensively analyzed the provisions of the rape shield statute, §18–3–407, C.R.S.1998. It stated that the basic purpose of the statute is to provide rape and sexual assault victims greater protection from humiliating "fishing expeditions" into their past sexual conduct, unless a showing is made that the evidence would be relevant to some issue in the case. The court noted that the statute was a reflection that a rape victim's past sexual conduct has no bearing at all on either the victim's credibility or the issue of consent.

The *Murphy* court further held that evidence of past sexual conduct is closely related to evidence of sexual orientation, and therefore, the rape shield statute's prohibition against evidence of a rape victim's past sexual conduct also precludes evidence concerning the rape victim's sexual orientation.

Here, in contrast, the victim was not a rape victim, the defendant was not accused of sexual assault, the defense asserted was not consent, nor was the evidence offered to impeach the victim's credibility. Instead, the theory of defense was that the *victim* was attempting to sexually assault the *defendant* and that the defendant was acting in self-defense when he killed the victim. Accordingly, the rape shield statute does not apply.

### B.

Defendant contends that the evidence is admissible under CRE 404(a)(2). Because defendant relied on CRE 404(b) in the trial court but has abandoned that contention on appeal, we first note that a plain error standard of review is applicable. *See People v. Olson,* 921 P.2d 51 (Colo.App.1996).

Plain error exists only when an appellate court can say with fair assurance that an error occurred, and that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See* Crim. P. 52(b).

Evidence concerning the character of a victim is admissible when offered by the defendant to prove a pertinent character trait of the victim. CRE 404(a)(2).

■ Evidence concerning a victim's sexual orientation may be relevant to corroborate a defendant's contention that he or she acted in self-defense to repel a sexual assault by the victim. *See People v. Erickson,* 883 P.2d 511 (Colo.App.1994); *see also People v. Rowland,* 262 Cal.App.2d 790, 69 Cal.Rptr. 269 (1968).

Proof of a pertinent character trait is generally limited to reputation or opinion testimony. CRE 405(a). However, evidence of specific instances of conduct can be used to prove a pertinent character trait if the trait to be proven is an essential element of a charge, claim, or defense. CRE 405(b).

■ To determine whether the character trait a party seeks to prove is an essential element of a charge, claim, or defense, the proper inquiry is whether proof, or failure of proof, of the character trait by itself actually satisfies an element of the charge, claim, or defense. If not, then character is not essential, and evidence should be limited to opinion or reputation. *See United States v. Keiser,* 57 F.3d 847 (9th Cir.1995).

The affirmative defense of self-defense is statutorily defined as follows:

(1) Except as provided in subsections (2) and (3) of this section, a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

(2) Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:

. . . .

(c) the other person is committing or reasonably appears about to commit . . . sexual assault. . . .

Section 18–1–704, C.R.S.1998.

■ Here, assuming that evidence of the victim's sexual orientation was relevant and admissible under CRE 404(a)(2), *see People v. Erickson, supra,* we nevertheless conclude that the evidence defendant sought to introduce was inadmissible under CRE 405(b) because it concerned specific acts of the victim that would not, by themselves, have proven an element of the defense. *See* CRE 405(b); *United States v. Keiser, supra.* Neither the evidence of the victim's prior conduct, nor his alleged homosexuality constitutes an *essential* element of defendant's claim that the use of deadly physical force was justified because he was acting to prevent a sexual assault. Hence, even if the specific instances of conduct offered by the defendant tend to prove that the victim was homosexual, proof of the victim's homosexuality does not, by itself, prove an element of self-defense.

Accordingly, evidence concerning the victim's homosexuality sought to be admitted under CRE 404(a)(2) could only be introduced via reputation or opinion evidence. *See United States v. Keiser, supra.* Thus, we find no error, let alone plain error, in the trial court's action here. Accordingly, there was no abuse of discretion in the trial court's refusal to admit the proffered evidence.

### C.

■ Defendant nevertheless contends that the evidence should have been admitted because the prosecution "opened the door" to this evidence by calling the victim's widow to

the stand to testify. The widow's testimony included, *inter alia*, that she and the victim were married; that he had been employed by a religious organization; that he was in the park to gather pine cones for a Christmas party at the church; and that a couch that had been in the back of the victim's van was there only because of a lack of storage space in the victim's garage. This evidence, according to defendant, implies that the victim was heterosexual, and he should have been allowed to introduce evidence rebutting it.

■ The concept of "opening the door" represents an effort by courts to prevent one party from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression. *People v. Miller*, 890 P.2d 84 (Colo.1995). When a party opens the door to inadmissible evidence, an opponent may then inquire into the previously barred matter. *See People v. Rollins*, 892 P.2d 866 (Colo. 1995).

However, even if the prosecution "opened the door" here, that does not mean that the responding or rebutting evidence is necessarily admissible in *any* form. In other words, a conclusion that the prosecution opened the door to the victim's sexual orientation does not suspend other applicable rules of evidence concerning the form of the rebutting evidence. *See Cardenas v. State*, 971 S.W.2d 645 (Tex.App.1998) (hearsay evidence that party responding to "opened door" seeks to introduce must still be admissible under hearsay exception).

Here, defendant's proffered evidence does not meet the standards of CRE 405 because it represented specific instances of conduct, rather than opinion or reputation. Accordingly, the trial court did not err in precluding its admission.

## II.

Defendant next contends the trial court erred by admitting expert testimony from a prosecution witness concerning crime reconstruction and prohibiting his own expert from testifying concerning typical reactions

of people subjected to sexual assault. We disagree.

■ Trial courts possess broad discretion in determining the admissibility of expert testimony pursuant to CRE 702, and we will not overturn the trial court's decision absent manifest error. *Lanari v. People*, 827 P.2d 495 (Colo.1992).

■ The test for admissibility of expert testimony under CRE 702 is whether the proffered testimony can appreciably assist the jury in understanding the evidence or determining a fact in issue. The pivotal question trial courts must answer when exercising discretion concerning the admissibility of proffered expert testimony pursuant to CRE 702 is whether "on this subject can a jury from this person receive appreciable help?" *People v. Williams*, 790 P.2d 796, 798 (Colo.1990).

■ When deciding whether to admit expert testimony, the trial court must consider: (1) the nature and extent of other evidence in the case; (2) the expertise of the proposed expert witness; (3) the sufficiency and extent of the foundational evidence upon which the expert witness' ultimate opinion is to be based; and (4) the scope and content of the opinion itself. *Lanari v. People, supra.*

### A.

■ The prosecution's expert witness was experienced in bloodstain pattern interpretation and crime scene reconstruction. Before trial, this expert reviewed various reports, photographs, and a videotape of the crime scene. His proffered testimony contained his opinion on how the encounter between the defendant and victim transpired, based on the splattered blood, the parties' footprints, and the terrain.

In deciding to admit this witness' testimony, the court found that the witness had knowledge, skill, experience, and training in both blood splatter analysis and crime scene reconstruction. Further, because this particular witness' expertise enabled him to point out things that a lay person would not normally observe and draw conclusions that a lay person would not normally reach, the

court found that his opinions could appreciably assist the jury.

We conclude that the trial court properly analyzed the admissibility of this expert's testimony, and we find no abuse of discretion. *See Lanari v. People, supra.*

## B.

██ Defendant's proposed expert witness was a psychology professor who would have testified that, based on literature she had read and a survey she had conducted, a male faced with a sexual assault by another male typically responds with anger and rage. She was also prepared to testify that male victims of rape by another male are reluctant to report the incident and that, therefore, defendant's delay in reporting the incident was not uncommon given the attempted sexual assault.

In analyzing the admissibility of this witness' testimony, the court used the *Lanari* factors. It found that this witness was qualified as an expert in psychology and capable of producing unbiased surveys. However, the court noted that the survey upon which the witness' testimony was based contained facts that were inconsistent with the defendant's story, that is, in the survey, the respondents were asked about a situation in which the perpetrator of the sexual assault was a stranger and surprised the victim from behind.

Also of significance to the court was the fact that the subjects of the survey were not sexual assault victims, and their answers merely hypothesized how they would react to a sexual assault.

The court concluded that the survey, which was the basis for the expert's ultimate opinion, was insufficient. It also concluded that the expert, based on the literature she had reviewed, drew conclusions that were properly left to the jury. Therefore, the court refused to allow this expert to testify.

The trial court's decision on this issue was properly based on the factors enumerated in *Lanari*. We can find no abuse of the trial court's discretion. Moreover, there was no issue raised at trial concerning defendant's

"late reporting" of this incident. We therefore reject defendant's contention.

## III.

Defendant also contends that his conviction must be reversed because the trial court erroneously instructed the jury concerning self-defense in two respects. We disagree with both of defendant's contentions.

## A.

First, defendant asserts that the court erred because it did not require the jury first to consider whether defendant had used "deadly physical force" and only then determine whether use of deadly physical force was justified. We disagree.

Because defendant did not object to the trial court's self-defense instruction, our review is limited to determining whether the court committed plain error. Crim. P. 52(b); *People v. Cowden,* 735 P.2d 199 (Colo.1987).

Plain error exists only if we can say with fair assurance that an error occurred and that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People,* 743 P.2d 415 (Colo.1987); *People v. Larson,* 782 P.2d 840 (Colo.App.1989) (using plain error analysis in the context of instructional error).

██ When an element of a crime is not contested at trial, failure to instruct the jury on that element does not constitute plain error. *People v. Fichtner,* 869 P.2d 539 (Colo.1994).

Under §18–1–704, C.R.S.1998, quoted above, a person is justified in using physical force upon another person (1) in order to defend himself or herself from what he or she reasonably believes to be the use or imminent use of unlawful physical force by the other person, and (2) he or she may use a degree of force which he or she reasonably believes to be necessary for that purpose.

Section 18–1–704(2), C.R.S.1998, provides that when the defender uses "deadly physical force," self-defense is limited to situations in which the aggressor's conduct constitutes, as relevant here, an actual or potential sexual

assault. Under the statutory scheme, §18–1–704(1), C.R.S.1998, applies to situations in which the force applied by the defender does not amount to deadly physical force.

The term "deadly physical force" is defined as "force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death." Section 18–1–901(3)(d), C.R.S.1998.

Here, defendant asserts that, in order for there to be "deadly physical force," the defender must *intend* for his or her conduct to cause the death of the aggressor. Moreover, he claims, the existence or non-existence of the requisite mental state of intent is a question of fact that must be determined by a jury and, because the *mens rea* of intent to cause death is a requisite component of the definition of deadly physical force, the determination of the existence or non-existence of such force is a factual issue for the jury.

Further, the argument proceeds, if the jury determines that a defendant did not intend to kill the aggressor, the jury must then consider whether the defendant used a degree of force he believed was reasonably necessary. Because the jury was not so instructed, defendant asserts a new trial is required.

■ Whatever the merits of defendant's contention, the theory of defense at trial was that he was justified in using deadly physical force because the victim was about to perpetrate a sexual assault on him. The issue of whether the defendant's actions in striking the victim constituted "deadly physical force" was not an issue, nor was it contested at trial.

Therefore, we conclude that failure to instruct the jury as defendant contends on appeal was not plain error. *See People v. Fichtner, supra* (failure to instruct jury on definition of "serious bodily injury" was not plain error because degree of injury not contested at trial); *Espinoza v. People,* 712 P.2d 476 (Colo.1985) (erroneous instruction on "knowingly" was not plain error because defendant's defense was premised on mistaken identity, not his lack of knowledge concerning the crime).

B.

■ Defendant's second assertion of error regarding the self-defense instruction is that the trial court erred in refusing to expand the jury instruction to include defense against assault, not just sexual assault. Again, we disagree.

■ An instruction embodying the defendant's theory of the case must be given if there is any credible evidence to support it, regardless of how improbable. *Lybarger v. People,* 807 P.2d 570 (Colo.1991).

■ However, the trial court initially determines whether there is a total absence of evidence to support a defendant's theory. Consequently, it is not error for a trial court to reject a defendant's proposed affirmative defense instruction if it is not grounded in, and supported by, the evidence. *People v. Dooley,* 944 P.2d 590 (Colo.App.1997).

Here, there is no evidence in the record to support defendant's contention that he feared a non-sexual assault by the victim. Moreover, the trial court found, and we agree, that there was no evidence to show that defendant feared serious bodily injury or perceived a grave risk of death.

Therefore, we perceive no error in the trial court's refusal to instruct the jury concerning the use of deadly physical force in the context of a non-sexual assault.

The judgment of conviction is affirmed.

Judge CRISWELL and Judge VOGT concur.