[Crim. No. 14599. First Dist., Div. One. Aug. 13, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMIE HUGH BARROW, Defendant and Appellant.

## COUNSEL

Jacqueline F. MacGregor, Ronald D. MacGregor and Jackson S. Wallace for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and James D. Hurwitz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAY, J.\***—Defendant and appellant appeals from a judgment of the Solano County Superior Court, after jury verdict, convicting him of involuntary manslaughter.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Issues Presented

1. Appellant's statements to the police were properly admitted.

 A. The court applied the proper standard in determining the voluntariness of appellant's statements.

 B. Appellant's statements were voluntary.

 C. Appellant's confession was not an invocation of his Fifth Amendment privilege.

2. Cross-examination of a witness was not improperly restricted.

3. The prosecutor was not guilty of misconduct.

## Record

Appellant was charged by information with violation of section 187 of the Penal Code (murder). During the trial the court granted appellant's motion for a directed verdict pursuant to section 1118.1 of the Penal Code, as to first degree murder. The jury returned a verdict of guilty of involuntary manslaughter. Appellant was sentenced to state prison for the term prescribed by law. Appellant appeals from the judgment.

## Facts

Madelyn ("Lyn") Hassett and Ronald Wright met in June 1974. About five months later Lyn moved into the apartment Ron shared with appellant in Vallejo. Difficulties arose, however, between Ron and Lyn because Lyn continued to see her "ex-husband" Bob. Lyn eventually moved into her own apartment in Vallejo.

On April 1, 1975, at about 1:30 p.m., Lyn came by the service station where appellant was employed and invited appellant to go for a drink. They went to a bar and remained there for about three hours, during which time appellant had seven or eight drinks. Lyn had arranged to meet Ron at 3:15 but she failed to keep the appointment. Lyn drove appellant back to the service station and on her way home saw Ron driving behind her. They pulled into a parking lot where Ron told Lyn that he had lost his roommate and the girl he loved and that he knew

what was going on. Lyn returned to her house where she attempted to call Ron but received no answer. After a short while she became worried and drove over to Ron's.

Meanwhile, appellant left work and returned home. As he drove into the driveway, Ron drove in beside him. Ron demanded that appellant take his sunglasses off and after he complied Ron hit him three or four times, screaming, "I seen you with Lyn." They moved to the back yard where Ron continued hitting appellant saying, "I know what's going on between you and Lyn. You're a hell of a buddy, Jim." Appellant attempted to calm Ron, but when Lyn arrived on the scene Ron became angrier. Ron continued hitting appellant and kicked him in the groin. At this point appellant became angry. He went to the kitchen, grabbed a knife, and went out to the patio. The men continued to struggle and appellant said, "Ron, let's quit this." Ron lunged forward onto the knife.

A pathologist testified that Ron suffered two stab wounds. One was a downward wound into the chest cavity to a depth of about two to four inches and was not particularly disabling. The fatal wound was directed upward through the chest to a depth of about eight inches and severed the innominate vein.

The police were contacted. Then appellant called his employer William Pendergast and said, "I'm in trouble. I think I just killed Ron." Pendergast went to appellant's home immediately.

Vallejo Police Officer Victor Moore arrived within a minute of the call and assisted the ambulance crew. He then advised appellant of his rights and appellant indicated a willingness to speak. Appellant told Moore that Ron had met him in the driveway and hit him as he got out of the car and that the fight moved to the back yard area where Ron continued to hit appellant. He stated that at that time he found a knife on the patio and picked it up and that Ron was stabbed one time.

Later that evening, Vallejo Police Detective Richard Hoffman and Deputy District Attorney Charles Meyerherm took two statements from appellant. At the trial, appellant testified in his own behalf.

1. Appellant's statements to the police were properly admitted.

At a hearing outside the presence of the jury, the court determined that appellant's statement to Officer Moore and his later statements to

Detective Hoffman were made following a knowing and voluntary waiver by appellant of his *Miranda* rights and were therefore admissible. Appellant challenges this determination on the following grounds: (1) That the burden of proof used to determine the voluntariness of an admission or confession, should be the "reasonable doubt" standard rather than the "preponderance of the evidence" standard; (2) that appellant's statements were not the product of a rational intellect and free will; and (3) that his confession was unlawfully obtained because his request to talk to his employer at or near the commencement of the interrogation was an invocation of his Fifth Amendment privilege.

*A. The court applied the proper standard in determining the voluntariness of appellant's statements.*

The court determined that the voluntariness of appellant's confession must be proved by a preponderance of the evidence rather than by proof beyond a reasonable doubt. In *People* v. *Chen* (1974) 37 Cal.App.3d 1046, 1049 [112 Cal.Rptr. 894], the court stated: "Although California cases have held that the 'reasonable doubt' standard is to be applied in determining the voluntariness of a confession (see *People* v. *Stroud* (1969) 273 Cal.App.2d 670 [78 Cal.Rptr. 270]), those holdings were based upon what was believed to be a federal rule implied in *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205]. The United States Supreme Court has since declared that the 'preponderance of the evidence' standard meets the requirements of the Fourth Amendment and that *Jackson* v. *Denno, supra,* did not hold to the contrary (*Lego* v. *Twomey* (1972) 404 U.S. 477 [30 L.Ed.2d 618, 92 S.Ct. 619]). A state may adopt a higher standard than that required by the United States Constitution, but we do not find that California has done so. The record contains substantial evidence in support of the finding by the trial court that the confession was voluntary." (See also *People* v. *Hutchings* (1973) 31 Cal.App.3d 16, 19-20 [106 Cal.Rptr. 905].) It is concluded that the court applied the proper standard.

*B. Appellant's statements were voluntary.*

Appellant contends that his statements were not voluntary. "In numerous decisions it is said that an appellate court is not bound by the trial court's determination of the voluntariness of a confession. It is the duty of a reviewing court to examine the uncontradicted facts to determine independently whether the trial court's conclusion of volun-

tariness was properly found. [Citations.] ■ In determining whether the defendant's confession is the product of a rational intellect and a free will, the totality of the circumstances surrounding the confession must be considered. [Citation.] Where the evidence is conflicting, an appellate court will accept the trial court's finding if the evidence relied on by the trial court 'is not so improbable as to be entirely unworthy of belief.' [Citation.]" (*People* v. *Hutchings, supra,* 31 Cal.App.3d 16 at p. 20.)

■ Appellant contends that when he gave his statement to Officer Moore shortly after the stabbing, he was intoxicated and in a highly emotional state and that therefore his confession was not the product of a rational intellect and free will. Officer Moore testified that when he arrived on the scene he knew only that a stabbing had occurred. The ambulance arrived at about the same time that Moore arrived and departed with the victim about three minutes later. Appellant commenced explaining to the officer what had happened. Moore stopped him and read him his rights from a card, asked him if he understood his rights, and if he wanted to say anything. Appellant stated that he understood his rights and that he would talk to Moore. Moore stated that he detected that appellant's eyes were bloodshot and that there was alcohol on appellant's breath but that appellant was able to respond to the questions he asked. It was stipulated that appellant's blood alcohol level at the time of the stabbing was between .17 and .19. Having reviewed the record, it is concluded that the prosecution sustained its burden of proving that appellant's statement to Moore was voluntarily given:

■ Appellant also contends that his two statements to Detective Hoffman and Deputy District Attorney Meyerherm approximately four or five hours later at the Vallejo Police Department were not the product of a free will but were induced by Hoffman and Meyerherm. It was stipulated that the validity of these two statements which consist of a tape-recorded statement and a transcribed statement would be decided together.

Appellant concedes and the tape recording indicates that appellant was again informed of his rights. He stated that he understood his rights but that he did not know what to say. Between lengthy pauses he was told that it was a decision he would have to make, that only he could make up his mind, and was advised not to say anything until he made up his mind. Appellant then asked if he could talk to his employer Bill Pendergast. He was told "no" but that he would certainly be allowed the

services of an attorney. After a discussion of how the victim's parents could be contacted, Meyerherm stated, "I think it boils down to do you want to tell us what happened? Now you don't have to, you know that." Appellant then stated, "I think it would be the best thing to do." Meyerherm then stated, "Do you want to tell us your version of what happened? Fine. It will be down on tape. Your attorney can use it just as well as we can." Appellant was again reminded of his rights. He stated that he understood them and that he wanted to tell the truth and that the truth couldn't hurt a person.

Appellant contends that Meyerherm's statement, "Your attorney can use it just as well as we can," convinced him that it was in his best interest to talk. The tape itself indicates that Meyerherm's statement was made after appellant decided that giving his statement would be "the best thing to do" and that Meyerherm's statement was made in reference to the fact that appellant's statement was being recorded.

In *People* v. *Hill* (1967) 66 Cal.2d 536, 549 [58 Cal.Rptr. 340, 426 P.2d 908], it was stated: "When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity. On the other hand, if in addition to the foregoing benefit, or in the place thereof, the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible." If Meyerherm's statement is viewed as offering any kind of benefit, it is concluded that there was nothing improper in the statement.

At the conclusion of the transcribed statement, the following conversation occurred: "MR. MEYERHERM: I presume now for the record that what you have told us here has been freely and voluntarily spoken? MR. BARROW: Yes. MR. MEYERHERM: Nobody coerced you or made any promises to you about any leniency? Your attorney would want to know that. MR. BARROW: No. MR. MEYERHERM: Anybody threaten or use any force upon you or threaten to use any force until you told us what happened? Did anybody suggest you would be better off if you told? MR. BARROW: Nobody said anything. MR. MEYERHERM: In summary, what you told us has been said by you voluntarily and freely? MR. BARROW: Yes. MR. MEYERHERM: There is no question about this? MR. BARROW: No question. No question. DETECTIVE HOFFMAN: I think we have gone

over everything. I think we can probably terminate this. MR. MEYERHERM: One thing more. You have been here for how long? DETECTIVE HOFFMAN: Well, since shortly after 5:00. MR. MEYERHERM: Okay. Have you been abused in any way? MR. BARROW: No. MR. MEYERHERM: Denied—your attorney would like to this [*sic*] this. Did you have food? Were you given food? MR. BARROW: Everybody has been really nice."

It is concluded that there was ample evidence to support the trial court's conclusion that the recorded statements and transcribed statements were voluntary.

*C. Appellant's confession was not an invocation of his Fifth Amendment privilege.*

■ Appellant contends that his confession was unlawfully obtained because his request to talk to his employer, Bill Pendergast, was an invocation of his Fifth Amendment privilege under the rules established in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. His position is that by indicating his desire to talk to his employer and friend Bill Pendergast, before talking further to police, he invoked his *Miranda* rights.

The tape recording indicates that while appellant was thinking about whether to waive his rights, he said, "Can I ask you a big favor? My boss, Bill Pendergast, can I call him and have him come down and talk to me for a second before I say anything?" Detective Hoffman said, "No. You'd certainly be allowed telephone service for an attorney."

■ Words or conduct which reasonably appear inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police at that time amount to an invocation of the Fifth Amendment privilege. (*People* v. *Burton* (1971) 6 Cal.3d 375, 382 [99 Cal.Rptr. 1, 491 P.2d 793]; *People* v. *Randall* (1970) 1 Cal.3d 948, 956 [83 Cal.Rptr. 658, 464 P.2d 114].)

■ *Burton* held that a minor's request to see his parents is such an invocation of the privilege. There the court reasoned: "It appears to us most likely and most normal that a minor who wants help on how to conduct himself with the police and wishes to indicate that he does not want to proceed without such help would express such desire by requesting to see his parents. For adults, removed from the protective

ambit of parental guidance, the desire for help naturally manifests in a request for an attorney. For minors, it would seem that the desire for help naturally manifests in a request for parents. It would certainly severely restrict the 'protective devices' required by *Miranda* in cases where the suspects are minors if the only call for help which is to be deemed an invocation of the privilege is the call for an attorney. It is fatuous to assume that a minor in custody will be in a position to call an attorney for assistance and it is unrealistic to attribute no significance to his call for help from the only person to whom he normally looks—a parent or guardian. It is common knowledge that this is the normal reaction of a youthful suspect who finds himself in trouble with the law." (*People* v. *Burton, supra,* 6 Cal.3d 375 at p. 382.)

Here, appellant, who is an adult, requested not to call an attorney but only to call his nonattorney friend and employer. Detective Hoffman stated that appellant "didn't ask me to call his boss who would in turn call a lawyer. If he would have told me that, that he wanted to get ahold of his boss to get a lawyer for him, he would have been allowed the phone call." It is concluded that appellant's request was not an invocation of the Fifth Amendment privilege.

2. Cross-examination of a witness was not improperly restricted.

 Appellant contends that the trial court improperly restricted the scope of his cross-examination of Lyn Hassett by refusing to let appellant cross-examine her at length regarding her relationship with her ex-common law husband. The court sustained the prosecution's objection to this cross-examination under Evidence Code section 352 on the basis that it would necessitate undue consumption of time and create a substantial danger of undue prejudice.

The issue of the witness' relationship with her ex-common law husband was collateral to the issue of appellant's state of mind when he stabbed the victim and appellant conceded that his purpose was to challenge the witness' credibility. It was appellant's contention that because the witness had testified that her relationship with the victim had been "beautiful," he wanted to question her with regard to her relationship with her ex-common law husband to show that she was not being truthful. The record indicates that there was ample evidence presented that the witness' relationship with the victim was not "beautiful."

It is concluded that the trial court did not abuse its discretion in restricting the scope of cross-examination as the evidence sought would have been cumulative and unduly prejudicial. ■ A trial court's exercise of discretion under Evidence Code section 352 will not be reversed on appeal absent a clear showing of abuse. (*People* v. *Delgado* (1973) 32 Cal.App.3d 242, 251 [108 Cal.Rptr. 399], disapproved on other grounds in *People* v. *Rist* (1976) 16 Cal.3d 211, 221-222 [127 Cal.Rptr. 457, 545 P.2d 833].)

■ Moreover, if there was error, it was not prejudicial. Appellant was convicted of involuntary manslaughter. During the opening statement, defense counsel told the jury he felt involuntary manslaughter was the appropriate verdict. It is concluded that it is not probable that a verdict more favorable to appellant would have been reached had the additional cross-examination been permitted. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

3. The prosecutor was not guilty of misconduct.

■ Appellant contends that the prosecutor committed misconduct in his examination of an expert witness and in making a reference to a ruling in chambers by the trial court supporting the objection to defense counsel's cross-examination of Lyn Hassett. In none of the instances cited as misconduct did the defense attorney object, make an assignment of misconduct, and request admonition of counsel. ■ "[I]t is the general rule that error predicated on the alleged misconduct of the prosecutor cannot be raised on appeal in the absence of (a) an assignment of such misconduct as error and (b) a request to the trial court to instruct the jury to disregard it." (*People* v. *Ney* (1965) 238 Cal.App.2d 785, 790 [48 Cal.Rptr. 265].) ■ Furthermore, it does not appear probable that a verdict more favorable to appellant would have resulted in the absence of these remarks. (*People* v. *Watson, supra,* 46 Cal.2d 818 at p. 836.)

Judgment affirmed.

Sims, Acting P. J. and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 21, 1976.