[Crim. No. 11536. Third Dist. Aug. 26, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY FLOYD SHOEMAKER, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Cynthia A. Thomas, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Gary A. Binkerd, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SPARKS, J.**—We here consider whether defense evidence of a victim's subsequent acts of violence is admissible in a criminal case to prove his aggressive and violent character at the time of the earlier crime. We conclude that this post crime character evidence is relevant and, like all relevant evidence, is admissible unless properly excluded under Evidence Code section 352.

A jury convicted defendant of assault with a deadly weapon (Pen. Code, § 245, subd. (a)), and found he inflicted great bodily injury in the commission of that crime. (Pen. Code, § 12022.7.) He admitted a prior conviction. (Pen. Code, § 667.5, subd. (b).) Sentenced to state prison for an aggregate term of seven years, his sole contention on appeal is that the trial court abused its discretion by excluding evidence of subsequent acts of violence by the victim. We find no discretionary error and consequently affirm the judgment.

I

Late in the afternoon of January 20, 1981, Ralph Kelly observed a woman he had known previously walking on Rio Linda Boulevard in Sacramento. The woman, Barbara C., was arguing with the defendant, her boyfriend. At Kelly's invitation, Barbara got into the pickup truck in which Kelly was riding. They drove to the home where Barbara and defendant lived.

When they arrived, defendant had also returned and was outside. Barbara invited Kelly inside where the three had some drinks and

talked. Later that evening, all three went to a nearby bar. Barbara and Kelly returned to the house and went to bed together. Defendant remained at the bar.

Kelly later awoke to the sound of Barbara screaming and felt a knife in his side. He jumped up and saw defendant with the knife. As Kelly and defendant wrestled for the knife, Kelly was stabbed eight times. Defendant went to a neighbor's house and told the resident he had stabbed a man because the man was having sex with his girl friend. Defendant also told police after his arrest that he saw his girl friend and Kelly in bed together and that he stabbed Kelly.

Defendant testified he stabbed Kelly in self-defense. Defendant told the jury when he returned home he found the door broken and, as he went inside, he was struck on the head and knocked unconscious. After regaining consciousness, defendant assumed there was a burglar on the premises. When he opened the bedroom door, Barbara screamed and defendant saw a man jump up and try to grab him. Defendant used the knife to protect himself. He denied telling his neighbor he stabbed Kelly because Kelly was having sex with Barbara, and only vaguely remembered talking with police after his arrest. The parties stipulated that shortly after his arrest defendant had a blood alcohol level of .30.

The People moved *in limine* to exclude any reference by defendant to an incident occurring two and a half months after the instant offense in which Kelly allegedly terrorized an elderly couple in their home and fired a shot at one of them. The court ruled that evidence of Kelly's alleged assault would have little probative value, would be cumulative and prejudicial, and would confuse the jury and consume too much time. The couple's testimony was consequently excluded under Evidence Code section 352. Nevertheless, the court took judicial notice of the pending charges against Kelly arising out of that incident and read them to the jury: Single counts of burglary, attempted robbery, and attempted murder, as well as various weapons charges. Those charges were admitted into evidence on the issue of Kelly's possible bias or motive in testifying for the prosecution. In addition, two defense witnesses were permitted to testify that Kelly was violent and dangerous, and had assaulted both his ex-wife and a former girl friend. Finally, the court instructed the jury that evidence of Kelly's character for violence was admissible for the purpose of showing Kelly acted in conformity with such character and was the aggressor.

Defendant contends he was denied a fair trial because he was precluded from presenting all the evidence about the circumstances of the subsequent acts of violence by Kelly. He asserts that the excluded evidence would have shown Kelly had a character for violence and had a tendency to attack, without reason, people who had befriended him.

## II

■ Evidence Code section 1103[1] authorizes the defense in a criminal case to offer evidence of the victim's character to prove his conduct at the time of the charged crime. ■ ■ ■ Consequently, in a prosecution for a homicide or an assaultive crime where self-defense is raised, evidence of the violent character[2] of the victim is admissible to show that the victim was the aggressor. (*People* v. *Rowland* (1968) 262

---

[1]Evidence Code section 1103, subdivision (a), reads: "In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if such evidence is:

"(1) Offered by the defendant to prove conduct of the victim in conformity with such character or trait of character. .

"(2) Offered by the prosecution to rebut evidence adduced by the defendant under paragraph (1)."

Subdivision (b) of that section restricts the admission of character evidence of the complaining witness' sexual conduct in certain sexual offenses.

Evidence Code section 1101 provides: "(a) Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts.

"(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

All further statutory references are to the Evidence Code.

[2]Although the term "character" is not defined in the Evidence Code, it is generally described as "the aggregate of a person's traits" and means "disposition" (i.e., the tendency to act in a certain manner under given circumstances). (See Model Code of Evidence, rule 304, com. (1942); see also 1 Wigmore, Evidence (3d ed. 1940) § 52, p. 446.) As Witkin notes, "[t]here are *different traits of character* and the evidence must relate to the particular trait involved." (Witkin, Cal. Evidence (2d ed. 1966) Circumstantial Evidence, § 321, p. 285; italics in original.) The trait involved here is for violence and that violent trait has been variously depicted as bloodthirsty, dangerous, revengeful and turbulent. (See generally, Annot., Admissibility of Evidence as to Other's Character or Reputation for Turbulence on Question of Self-Defense by One Charged with Assault or Homicide (1965) 1 A.L.R.3d 571.)

Cal.App.2d 790, 797 [69 Cal.Rptr. 269]; *People* v. *Smith* (1967) 249 Cal.App.2d 395, 404-405 [57 Cal.Rptr. 508].)

As the *Rowland* court explained, "[b]efore the Evidence Code, the character trait could be shown by reputation evidence, but not by evidence of specific acts of the victim on third persons. [Citations.] It is now permissible under section 1103 of the Evidence Code to prove the aggressive and violent character by specific acts of the victim on third persons. [Citation.]" (262 Cal.App.2d at p. 797.)

All of the decisions relating to character evidence of violence have dealt with *prior*, rather than *subsequent*, acts of aggression by the alleged victim. (See e.g., *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 534 [113 Cal.Rptr. 897, 522 P.2d 305] ("excessive force on previous occasions"); *Tyler* v. *Superior Court* (1980) 102 Cal.App.3d 82, 89 [162 Cal.Rptr. 82] ("past assaultive behavior"); *Kelvin L.* v. *Superior Court* (1976) 62 Cal.App.3d 823, 828 [133 Cal.Rptr. 325] ("prior acts of unwarranted or excessive violence"); *Engstrom* v. *Superior Court* (1971) 20 Cal.App.3d 240, 245 [97 Cal.Rptr. 484] ("prior acts of violence or assaultive conduct").) The Attorney General notes that the Law Revision Commission, in its historical comment to Evidence Code sections 1102 and 1103, referred to "prior acts." Relying upon this decisional history and that comment the Attorney General reasons that "only instances of *prior* conduct are those that come within the meaning of section 1103, since subsequent conduct to prove a trait of character would be irrelevant as not tending to demonstrate conformity of conduct with such trait on an earlier occasion." (Italics in original.) We find that reasoning incongruent. As Wigmore astutely observed, the time of character evidence ". . . as a question of Relevancy, is simple enough . . . . Character at an earlier or later *time* than that of the deed in question is relevant only on the assumption that it was substantially unchanged in the meantime, *i.e.* the offer is really of character at one period to prove character at another, and the real question is of relevancy of this evidence to prove character, not of the character to prove the act." (1 Wigmore, Evidence (3d ed. 1940) § 60, p. 463; italics in original.) He then concluded that ". . . there is no difficulty from the point of view of the relevancy of character; a man's trait or disposition a month or a year after a certain date is as evidential of his trait on that date as his nature a month or a year before that date; because character is a more or less permanent quality and we may make inferences from it either forward or backward." (5 Wigmore, Evidence (Chadbourn rev.

ed. 1974) § 1618, p. 595.) We find Wigmore's views compelling.[3] We therefore hold that evidence of the victim's subsequent acts of violence, when offered by the defendant in a criminal case, is relevant and admissible under section 1103 to prove the victim's violent character at the time of the earlier crime.[4]

### III

■ As the trial court recognized, section 352 permits it to exclude evidence if in the court's discretion "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Like all proffered evidence, character evidence is subject to exclusion under that section. (See e.g., *People v. Covino* (1980) 100 Cal.App.3d 660, 666 [161 Cal.Rptr. 155].)

Defendant acknowledges the prosecution is accorded the same protection that the defense enjoys from the use of prejudicial evidence having little probative value. (*People v. Love* (1977) 75 Cal.App.3d 928, 939 [142 Cal.Rptr. 532]; *People v. Barrow* (1976) 60 Cal.App.3d 984, 994-995 [131 Cal.Rptr. 913]; *People v. Arline* (1970) 13 Cal.App.3d 200,

---

[3]By way of analogy, we note that evidence of subsequent conduct is admissible under Evidence Code section 1101, subdivision (b), "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts." (See e.g., *People v. Griffin* (1967) 66 Cal.2d 459, 464-465 [58 Cal.Rptr. 107, 426 P.2d 507]; see also Witkin, Cal. Evidence (2d ed. 1966) Circumstantial Evidence, § 343, p. 302; 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 33.6, p. 1200.)

[4]At some point in time, we concede, evidence of the victim's character becomes too remote to have any probative value and thus becomes irrelevant. (See e.g., *People v. Gonzales* (1967) 66 Cal.2d 482, 500 [58 Cal.Rptr. 361, 426 P.2d 929] (victim's reputation for violence seven years before the crime held too remote to have evidentiary value). Cf. *People v. Archerd* (1970) 3 Cal.3d 615, 639 [91 Cal.Rptr. 397, 477 P.2d 421] (remoteness of evidence offered under Evidence Code section 1101, subdivision (b) "goes to its weight, not to its admissibility.").) The events here, occurring less than three months after the crime, obviously do not pose problems of remoteness.

We also note, in passing, that the recently enacted initiative measure, known as "The Victims' Bill of Rights" (Prop. No. 8), does not affect Evidence Code section 1103. That measure added section 28 to article I of the California Constitution. Subsection (d) of the section, entitled "Right to Truth-in-Evidence," expressly provides that "Nothing in this section shall affect ... Evidence Code, Sections 352, 782 or 1103." That subsection further provides that "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, ...""

205 [91 Cal.Rptr. 520].) But he urges, citing *People* v. *Reeder* (1978) 82 Cal.App.3d 543, 553 [147 Cal.Rptr. 275], that section 352 "must bow to the due process right of a defendant to a fair trial and to his right to present all relevant evidence of significant probative value to his defense." (Italics omitted.)

■ Defendant claims, in light of his own testimony someone struck him on the head for no reason, he needed to prove Kelly's tendency to act violently without provocation. Evidence of the circumstances surrounding Kelly's alleged attack on the elderly couple would, it is urged, bolster defendant's theory and support his contention Kelly attacked him in the bedroom. Defendant argues testimony of the attack on the elderly victims was of a qualitatively different nature than the other evidence of Kelly's previous attacks on his ex-spouse and girl friend. The subsequent attack was on strangers to Kelly in a nondomestic context. Thus, it was more akin to Kelly's alleged assault on defendant in this case. A comparison of the subsequent attack with Kelly's earlier assaults, defendant asserts, demonstrates that the subsequent character evidence was not cumulative.

Absent a clear showing of abuse, we are compelled to uphold the trial court's exercise of discretion under section 352. (*People* v. *Barrow, supra*, 60 Cal.App.3d at p. 995.)

We discern no such abuse here. Two defense witnesses testified Kelly was a violent, dangerous person who had committed prior assaults. The jury learned of the charges Kelly faced arising from the alleged assault on the elderly couple, and that Kelly had two prior assault convictions. The court instructed the jury it could consider evidence of Kelly's violent character on the issue of whether he was the aggressor in the fight with defendant.

Under these circumstances, the trial court could reasonably find, as it did, that the prejudicial impact of testimony by the victims of Kelly's alleged assault would far outweigh whatever minimal probative value the testimony had. In light of the multiplicity of charges against Kelly, and the fact he had not yet been tried, undue consumption of time, as well as confusion of the issues and the jury, was substantially certain to result. Moreover, contrary to defendant's assertions, the testimony was in fact cumulative. The jury had already been presented with ample evi-

dence of Kelly's character for violence.[5] (See *People* v. *Smith, supra*, 249 Cal.App.2d at pp. 403-405.)

We agree with defendant that he has a due process right to present evidence material to his defense so long as the evidence is of significant probative value. (*People* v. *Reeder, supra*, 82 Cal.App.3d at p. 553.) However, as the *Reeder* court emphasized, a defendant has no constitutional right "to present all relevant evidence in his favor, no matter how limited in probative value such evidence will be so as to preclude the trial court from using Evidence Code section 352." (*Ibid.*) We cannot say the court abused its discretion when it ruled the testimony of the subsequent assault was so different from the facts of the present case that its probative value was "relatively slight."

Moreover, in light of the abundant evidence presented that Kelly was a violent person, any error (and we find none) in the failure to admit testimony of the subsequent incident could not be prejudicial to defendant. (*People* v. *Smith, supra*, 249 Cal.App.2d at p. 405.) Defendant's damning admissions to his neighbor and the police constitute overwhelming evidence of his guilt. Thus, any conceivable error depriving defendant of a due process right to present this character evidence would be harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

The judgment is affirmed.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied September 22, 1982.

---

[5]Defendant cites *People* v. *Mayfield* (1972) 23 Cal.App.3d 236 [100 Cal.Rptr. 104], for the proposition that the accused's right to present evidence in his defense is so fundamental that consumption of time is irrelevant where the evidence is not cumulative. *Mayfield* arose in a situation where the defendant was precluded from attacking the credibility of her hearsay accuser, the only percipient witness, who had died before trial. The Court there held that "[t]he right of a defendant to attack the credibility of her hearsay accuser is so fundamental that consumption of time is irrelevant where the evidence is not cumulative." (23 Cal.App.3d at p. 243; see also *People* v. *Taylor* (1980) 112 Cal.App.3d 348, 365 [169 Cal.Rptr. 290].) As we have already noted, the testimony offered by defendant in this case was cumulative.