Filed 4/15/15  P. v. Bryson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060158 |
| v. | (Super.Ct.No. FSB1300046) |
| DONALD WALLACE BRYSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  William Jefferson Powell, IV, Judge.  Affirmed.

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, William M. Wood and Jennifer Truong, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

Defendant Donald Wallace Bryson shot and killed Armando Rodarte in a dispute over a $40 debt. Defendant claimed he acted in self-defense. A jury convicted defendant of second degree murder and possession of a firearm by a felon, and found the firearm allegations true. (Pen. Code §§ 187, subd. (a); 12022.53, subds. (b), (c), (d) and 29800, subd. (a).)[1] [2] The court sentenced defendant to a total sentence of 40 years to life.

On appeal, defendant contends the trial court should have allowed evidence that the victim had been convicted of kidnapping and was on parole, showing his violent character and motive. Defendant forfeited the claim of error because he did not argue this theory to support the admission of such evidence. Furthermore, defendant's self-defense claim was supported by other independent evidence and the jury knew that the victim had been recently released from prison. We affirm the judgment.

# II

## STATEMENT OF FACTS

Various witnesses and types of evidence afforded generally the same account of what happened on January 2, 2013. At 5:54 a.m. that morning, Rodarte, the victim,

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] It was also alleged defendant served a prior prison term conviction. (§ 667.5, subd. (b).)

engaged in a series of text messages with defendant's uncle, Lloyd Bryson,[3] asking for money to travel to Indio.

Kasandra Resendez, defendant's girlfriend, testified she and defendant used Lloyd's car to get lunch, which they brought back to his house in San Bernardino. Resendez saw a gun at Lloyd's house. Resendez overheard Lloyd say, in defendant's presence, that Lloyd owed Rodarte $40. Resendez saw defendant give Lloyd $40 to pay the debt.

Defendant and Resendez left again in Lloyd's car with Resendez driving but they returned and parked in front of Lloyd's house at approximately 1:30 p.m. Rodarte was standing by the neighbor's front gate. Resendez left the car, with the engine running and the driver's door open, and knocked on the house's side door. When there was no answer, Resendez went through the side gate to the back of the house. After she entered the backyard, Resendez heard gunshots fired from the front of the house. Neither Resendez nor the nearby neighbors heard any loud voices before the gunfire. Resendez returned to the front and saw the victim on the ground and defendant driving away in Lloyd's car with the passenger door open.

In postarrest statements to police, defendant said his Uncle Lloyd had asked him for some money and ammunition. Lloyd initially said the money was for food but then he said he wanted to pay a debt he owed to Rodarte. Lloyd told defendant that Rodarte

---

[3] We use Lloyd's first name for ease of reference.

had just been released from prison where he had served a long sentence. Defendant overheard Lloyd tell Rodarte that defendant was going to get the money. Defendant was able to obtain some money and ammunition which he gave to his uncle.

The day of the shooting, after defendant picked up Resendez, they returned to Lloyd's house and used Lloyd's car to get lunch. They left again to run an errand for Resendez. On the way to the car, defendant retrieved the Beretta from a hiding place and Resendez occupied the driver's seat.

Rodarte walked up to the car and confronted defendant, demanding money either from Lloyd or defendant. Defendant denied being involved and said his uncle was in the shower. Defendant and Resendez then drove off.

Defendant and Resendez had stopped for gas when Lloyd called to say he did not want to deal with Rodarte. Lloyd asked defendant to tell Rodarte that he had gone to the hospital. Defendant and Resendez returned to Lloyd's house and Rodarte was still there. While Resendez went up to the house, Rodarte approached defendant in the car. Rodarte argued with defendant about the money he was owed.

When Rodarte punched defendant in the face, defendant pulled out the Berretta and pointed it at Rodarte. Rodarte reached into his pocket and moved toward defendant. Defendant fired several times. Five bullets struck the victim on his outside left shoulder, his left armpit, his left-middle back (twice), and the lower center-right of his left buttock. Defendant switched to the driver's seat and drove away.

4

A sheriff's service specialist saw Lloyd's vehicle speeding erratically before stopping and parking on Monterey Avenue. Defendant left Lloyd's car from the driver's side and started across the street until he saw the sheriff's vehicle and returned to the car. A woman came out of a nearby house and spoke to defendant. After defendant drove away, two deputies began pursuing him. With lights and sirens activated, they followed defendant back to the Lloyd residence where defendant was taken into custody. Defendant said he had been attacked and the victim had pulled a gun on him.

Defendant was detained in the back of the sheriff's car. A set of keys and a bag containing five rounds of .25-caliber ammunition were found under the rear seat. A .25-caliber Beretta semiautomatic handgun was found in the center console of Lloyd's car with the magazine and firing chamber both empty.

One .25-caliber shell casing was on the front passenger floorboard, one was on the roadway, and four were in the dirt along the road. The six shell casings from the scene, and the five bullets removed from the victim's body, were fired from the Beretta.

Particles of gunshot residue was found on the victim and defendant's hands. The victim's right hand was in his right front jacket pocket, which also contained a handheld Taser, a Taser charging cord, and an empty nine-millimeter magazine.

III

DISCUSSION

A. *Character Evidence*

On appeal, defendant changed his argument from trial about how he proposed to

5

use the evidence of Rodarte's criminal history. In pretrial proceedings, defense counsel argued that Lloyd had told defendant that Rodarte was on parole for kidnapping and that Rodarte's parole status was relevant to defendant's state of mind. The trial court agreed that the evidence could be admissible but not without a foundation that defendant actually knew Rodarte was on parole. After the prosecutor asserted there was no evidence that defendant actually knew about Rodarte's parole status, the trial court ruled that knowledge of parole would not be relevant but knowledge of the kidnapping conviction would be. The only evidence finally presented at trial was that defendant knew from his uncle that Rodarte had been released from prison, not that he was on parole for kidnapping.

On appeal, defendant argues Rodarte's record was relevant character evidence under Evidence Code section 1103 and also showed Rodarte's state of mind. However, defendant did not offer these arguments below. Evidence Code section 354, subdivision (a), requires that "[t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means[.]"[4] In the trial court, defendant's theory of admissibility—the purpose and

---

[4] Evidence Code section 354 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of

*[footnote continued on next page]*

relevance of the evidence—was limited to defendant's state of mind and the trial court correctly rejected that as the basis for admissibility because of lack of foundation. Defendant did not propose additional theories of admissibility of evidence to show the victim's character and state of mind. Therefore, these claims are forfeited. (*People v. Smith* (2003) 30 Cal.4th 581, 623.)

Defendant's only argument on appeal is that the trial court erred in excluding evidence that Rodarte had a prior conviction for kidnapping and was on parole at the time of the shooting to show the victim's character and state of mind. Character evidence, including specific conduct, is admissible under Evidence Code section 1103.[5] (*People v. Shoemaker* (1982) 135 Cal.App.3d 442, 446-447.) Even before Evidence Code section 1103, it was "the general rule in California that in a prosecution for murder where the defense of self–defense is interposed, the defendant may introduce evidence that the reputation of the deceased for peace and quiet was bad, and known to him to be bad." (*People v. Keys* (1944) 62 Cal.App.2d 903, 912; *People v. Yokum* (1956) 145 Cal.App.2d

---

*[footnote continued from previous page]*
proof, or by any other means; [¶] (b) The rulings of the court made compliance with subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination."

[5] Evidence Code section 1103, subdivision (a)(l), provides: "(a) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character."

245, 259-260.)  After the enactment of Evidence Code section 1103, the law still recognizes "the well established fact in human experience that the known reputation of an assailant as to violence, even if specific acts are not within the knowledge of a person assaulted, has a material bearing on the degree and nature of apprehension of danger on the part of the person assaulted, (and further even if the reputation is unknown) to show that one who is turbulent and violent may more readily provoke or assume the aggressive in an encounter.  [Citations.]"  (*People v. Smith* (1967) 249 Cal.App.2d 395, 404.)

However, defendant's claim that the evidence should be admitted to show Rodarte's character and state of mind was forfeited by not arguing those theories to the trial court.  In any case, any error was not prejudicial because defendant knew about Rodarte's release from prison — even if he did not know about the kidnapping conviction and parole.

B.  *Prejudice*

Defendant said that his uncle had told him that Rodarte had just been released from prison after serving "a long long time."  The jury was informed by stipulation that Rodarte "was in state prison for a period of time before the shooting occurred . . . and had recently been released."

The jury knew that Rodarte had committed a crime or crimes serious enough to be sent to prison, showing Rodarte had a bad character and supporting defendant's claim he was in fear for his life.  The other independent evidence supporting defendant's self-

8

defense claim was that defendant's face was injured and that Rodarte's hand was in his jacket pocket with the Taser.

Defendant admitted that, after being punched in the face, he shot Rodarte, hitting his left side and his back. Apparently, Rodarte was turning away from defendant when he was shot. Self-defense is not applicable to a defendant who shoots a fleeing victim in the back. (*People v. Keys, supra,* 62 Cal.App.2d at p. 916.) In light of the evidence, there is no reasonable probability of a more favorable result had the excluded evidence been admitted. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

IV

DISPOSITION

There was no evidentiary error. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

KING
Acting P. J.

MILLER
J.