Filed 4/27/26  P. v. Matthews CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL JAMES MATTHEWS,<br>    Defendant and Appellant. | C102513<br><br>(Super. Ct. No. 24FE006661)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

1

THE COURT:

It is ordered that the opinion filed in this case on March 27, 2026, be modified as follows:

1.     On page 5, the second full paragraph beginning "Defense counsel argued that," add the following as the first sentence of the paragraph:

> Defense counsel noted, and the trial court acknowledged, that counsel had proffered evidence A.K. was a professional mixed martial arts fighter.

2.     On page 7, first full paragraph, the last sentence beginning "Further, while on appeal" is deleted in its entirety.

3.     On page 7, the second full paragraph beginning "Similarly, although counsel argued" is deleted in its entirety.

There is no change in the judgment.

Defendant's petition for rehearing is denied.

BY THE COURT:

/s/
ROBIE, Acting P. J.

/s/
RENNER, J.

/s/
BOULWARE EURIE, J.

2

Filed 3/27/26  P. v. Matthews CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C102513 |
| Plaintiff and Respondent, | (Super. Ct. No. 24FE006661) |
| v. | |
| MICHAEL JAMES MATTHEWS, | |
| Defendant and Appellant. | |

A jury found defendant Michael James Matthews guilty of assault with a deadly weapon and three driving offenses.  The trial court sentenced defendant to a prison term of four years eight months.

On appeal defendant contends the trial court erred:  (1) by excluding evidence that the assault victim, A.K., had a background in mixed martial arts, and (2) by failing to

1

consider sentencing defendant to the lower term under Penal Code[1] section 1170, subdivision (b)(6) due to his psychological trauma that contributed to the commission of his crimes. We disagree and affirm. The parties agree the abstract of judgment contains errors and must be corrected. We agree and order correction of the abstract of judgment as detailed below.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2023, A.K. was working around midnight as a bouncer at a bar. A.K. was at the rear entrance of the bar where he would typically sit on a barstool and check identification. He noticed a white truck driving against the traffic on a one-way street. The truck made a U-turn and entered a parking lot used by bar patrons. In making the turn, the truck hit construction barriers and came up on the curb. A.K. saw the outline of one person in the truck.

A.K. saw the truck park and defendant come from the parking lot. A.K. could see the truck was blocking cars in other parking spots. A.K. decided not to let defendant enter the bar given the bar's policy to deny entry to intoxicated patrons. Thus, A.K. told defendant he could not let him in the bar. Defendant asked why, and A.K. said defendant was too drunk and blocking cars in the parking lot. Defendant said he would move his truck, but A.K. said he would still not let defendant in.

Defendant was face-to-face with A.K., an arm's-length away, and acting aggressive. A.K. pushed defendant on the chest with an open hand, told defendant to leave, and said he was going to call the police. Defendant stumbled back but then stepped in and pulled a box cutter out of his pocket. The blade was out. Defendant said, "I'll fuck you up." A.K. punched defendant two or three times in the face. Defendant staggered and spun around, slashing and stabbing the blade in the air. A.K. tried to keep

---

[1]     Undesignated statutory references are to the Penal Code.

2

his distance and kept telling defendant to leave. After a couple of minutes, defendant dropped the blade and said, "I respect you. That was fast, kid. Let's go another round." A.K. found defendant's behavior "a little bizarre," alternating between being very agitated to being friendly but then getting upset again. A.K. grabbed the knife, ran inside the bar, and told the bartender to call the police. A.K. noticed he was bleeding from a gash on his finger.

Sacramento Police Officer Victor Rojas was dispatched to the bar, detained defendant, and placed him in the back of a patrol vehicle. The officer noticed multiple signs of intoxication, including defendant's demeanor, his watery and bloodshot eyes, and a strong odor of alcohol coming from him. Officer Rojas was unable to question defendant because he became aggressive when he was being detained. Defendant said that "once the cuffs came off," he would fight the officers. Officer Rojas also could not perform standard field sobriety tests and defendant refused a breathalyzer test. After learning defendant's name, the officer determined defendant's driver's license was suspended due to previously driving under the influence.

Defendant initially resisted a blood-alcohol test but blood was eventually drawn. The result was 0.114 percent blood-alcohol content. A witness testifying at trial as an expert estimated that a person with a blood-alcohol content of 0.114 at 3:02 a.m. previously would have had a blood-alcohol level of 0.166 at 12:25 a.m. The expert testified that to have a blood-alcohol level of 0.166, a male of 212 pounds (defendant's weight) would have to drink seven and a half to eight drink equivalents.[2]

---

[2] In defense, defendant's adopted brother, A.G., testified he drove defendant to the bar, dropped him off in the parking lot at about 6:00 or 7:00 p.m., gave defendant his keys, and left to go to a cannabis dispensary, where he called a friend who gave him a ride home. In rebuttal, the prosecution called a defense investigator who interviewed A.G. A.G. told the investigator that defendant was a friend.

Defendant was found guilty of three driving offenses and assault with a deadly weapon. In a bifurcated proceeding, the trial court found four aggravating circumstances true. The trial court sentenced defendant to the upper term of four years on the assault count and one-third the middle term on one of the driving offenses, for a total sentence of four years eight months. The court stayed the sentence of another driving offense and declined to impose sentence on the remaining driving offense.

Defendant appeals.

## DISCUSSION

## I

### *Evidence The Victim Was A Trained Fighter*

Defendant contends the trial court abused its discretion under Evidence Code section 352 by excluding evidence that A.K. was a professionally trained mixed martial arts fighter. He also contends this exclusion violated his due process right to present a defense. We are not persuaded.

### A

### *Background*

When defense counsel sought to question A.K. about "his history as [a trained] fighter," the trial court sustained the prosecution's relevance objection, which was followed by an unrecorded sidebar where the trial court indicated this line of questioning was objectionable as irrelevant. The next day defense counsel put his reasoning on the record.

Defense counsel argued the case involved an assault where both parties were injured, and A.K. testified to striking defendant "in a manner [that] is consistent with formal martial arts training." Counsel argued, "[T]he capacity of the victim to cause harm goes towards credibility and potential bias, as well as credibility of his potential -- of my client's potential testimony as to the degree of harm caused. It also goes towards -- the capacity to cause harm by the victim also goes towards a potential self-defense claim.

4

The proportional ability to cause harm, and thus force, is significantly higher by a trained fighter than a non-fighter."

The trial court responded that defendant pulled a knife or box cutter on A.K. first after approaching A.K. aggressively, and then A.K. punched defendant. Thus, it did not matter whether A.K. was a trained fighter, because defendant, as the initial aggressor who pulled a knife, could not assert self-defense. The court acknowledged, "I don't know if that's true, and you can testify that it's not, if that's -- I don't know. I'm just saying, that's the testimony we have."

Defense counsel argued that, as relevant on the issue of credibility, to be a professional fighter required a license, which can be revoked if the holder is found guilty of a crime related to the license. Counsel argued that, if A.K. started the fight, he had reason to lie about his actions to keep his license from being revoked, which made his fighting history relevant to "bias and credibility."

The prosecutor argued that under Evidence Code section 352 defense counsel's contention that A.K. is a licensed fighter who could lose his license is "entirely speculative." She argued that A.K. was working as a "bouncer," not as a professional fighter; there was no evidence defendant knew A.K. was a professional fighter, or that A.K.'s punches were consistent with formal fight training; and, in terms of "proportional ability," "things started getting physical" when defendant pulled a knife. The prosecutor concluded that the evidence was "entirely speculative" on "what happened that night" and should be excluded under Evidence Code section 352.

The trial court ruled: "I agree. It's a rabbit hole, I'm not going to go down it. So I'm not going to allow that under Evidence Code [section] 352."

B

*Analysis*

Where self-defense is raised to a homicide or assaultive crime, evidence of the victim's violent character "is admissible to show that the victim was the aggressor."

5

(*People v. Shoemaker* (1982) 135 Cal.App.3d 442, 446-447; see *People v. DelRio* (2020) 54 Cal.App.5th 47, 55.) If the victim's " '[violent] character was known to the defendant, the evidence [of it] tends to show the defendant's apprehension of danger.' " (*DelRio*, at p. 55.) If " 'not known, the evidence [still] tends to show that the victim was probably the aggressor.' " (*Ibid*.)

The trial court has discretion to exclude such evidence under Evidence Code section 352 if " 'its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Shoemaker*, *supra*, 135 Cal.App.3d at p. 448.) "Absent a clear showing of abuse, we are compelled to uphold the trial court's exercise of discretion under [Evidence Code] section 352." (*Shoemaker*, at p. 449.)[3]

Defendant argues the trial court abused its discretion in excluding A.K.'s "history as a professional [mixed martial arts] fighter" as it "showed that he had a propensity for violence, which was highly probative to [defendant's] claim of self-defense" and, despite defendant's lack of awareness of the victim's [mixed martial arts] background, tended to show that A.K. " ' "was probably the aggressor." ' " We conclude the trial court did not abuse its discretion in excluding the evidence under Evidence Code section 352.

---

[3] The People argue that defendant forfeited any claim that the trial court erred in excluding evidence admissible under Evidence Code section 1103. "Evidence Code section 1103 authorizes the defense in a criminal case to offer evidence of the victim's character [for violence] to prove [the victim's] conduct at the time of the charged crime." (*People v. Shoemaker*, *supra*, 135 Cal.App.3d at p. 446, fn. omitted; see Evid. Code, § 1103, subd. (a)(1).) On reply, defendant does not dispute that defense counsel did not raise Evidence Code section 1103. Defendant maintains, however, defense counsel's argument below was sufficient to preserve issues relating evidence of the victim's trained fighting background for review.

Below, defense counsel did not dispute that defendant pulled out a box cutter with the blade open before A.K. punched him.  This sequence of events does not suggest that evidence of A.K.'s participation in fighting sports would support either a claim of self-defense by defendant or that A.K. was the likely aggressor.  *DelRio*, cited by defendant, is distinguishable.  In that case, the probative value of evidence of the victim's violent acts was high because of the uncertainty of what happened at the scene, where both the defendant and murder victim were armed, both fired at each other, and the key question in terms of the defendant's self-defense claim was "[w]ho drew first?" (*People v. DelRio*, *supra*, 54 Cal.App.5th at pp. 56-57.)  Here, defense counsel did not express any disagreement with the trial court's repeated references to defendant pulling out a box cutter before A.K. punched him.  Further, while on appeal defendant refers to A.K. as a "professional [mixed martial arts] fighter," defense counsel did not actually state that A.K. was a professional fighter but that A.K. had a "history as [a mixed martial arts] fighter."

Similarly, although counsel argued that a professional fighter was required to be licensed and might lie about an encounter to protect a professional license, defense did not proffer any evidence that A.K. was licensed, as opposed to merely being trained or competing in the sport.  In any event, mixed martial arts does not refer solely to professional combatants.  The definition of "mixed martial arts" is "a contact sport that allows a wide range of fighting techniques including striking, kicking, and grappling." (Merriam-Webster Dict. Online (2026) <https://www.merriam-webster.com/dictionary/mixed%20martial%20arts> [as of Mar. 27, 2026], archived at <https://perma.cc/3CJH-Q2LC>.)  Thus, a "history as [a mixed martial arts] fighter" could include A.K.'s participation in mixed martial arts sports, including at a local gym for fitness and/or self-defense.  Not everyone who boxes is a licensed professional boxer.

In addition, at the trial court defense counsel asserted but did not attempt to describe A.K.'s actions in punching defendant as related to or characteristic of mixed

7

martial arts techniques. On reply, defendant attempts to supplement the record to fill this gap: "[Mixed martial arts] fighting is a combat sport. By its nature, it requires its participants to be violent and aggressive. [These] fighters train extensively in various fighting techniques. Professional [mixed martial arts] fighters must be aggressive, violent, and have quick reflexes and instincts." Defendant also argues that the quick punches A.K. threw showed professional training, because "[p]rofessional [mixed martial arts] fighting requires strength and expertise in punching," so the speed of the punches was "directly connected to his training as a professional . . . fighter."

We disregard facts presented without citation to the record. " 'Appellate review is generally limited to matters contained in the record. Factual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs.' " (*In re Bailey* (2022) 76 Cal.App.5th 837, 860; see *In re Marriage of Nelson* (2025) 115 Cal.App.5th 904, 908, fn. 3 ["We disregard facts with no pertinent record citation"].) It appears undisputed A.K. simply punched defendant multiple times in quick succession after defendant stepped towards him with a box cutter, an action that a person in A.K.'s occupation as a bouncer at a bar might be expected to perform without specialized training.

In sum, defendant has not shown the trial court clearly abused its discretion in excluding evidence of A.K.'s training in mixed martial arts under Evidence Code section 352. On the contrary, this line of questioning would have required undue consumption of time and created a substantial danger of confusing the issues in order to explore the nature and extent of A.K.'s participation in fighting sports and techniques he used, if any, with little probative value given the undisputed sequence of events.

Lastly, defendant briefly argues the trial court violated his constitutional due process right to present a defense by excluding evidence of A.K.'s mixed martial arts training. We find no error of state law and therefore no violation of due process. As our high court has observed, "Defendant's argument fails to account for the general rule that

8

the application of the ordinary rules of evidence under state law does not violate a criminal defendant's federal constitutional right to present a defense, because trial courts retain the intrinsic power under state law to exercise discretion to control the admission of evidence at trial." (*People v. Abilez* (2007) 41 Cal.4th 472, 503.)

II

*Penal Code Section 1170, Subdivision (b)(6)*

Defendant contends the trial court erred by failing to consider whether the lower term presumption under section 1170, subdivision (b)(6) applied because psychological trauma contributed to his crime. Defendant argues the case should be remanded for resentencing. We disagree because, while defendant suffered from a mental health condition, the record does not indicate it was attended with psychological trauma as required by section 1170, subdivision (b)(6)(A).

A

*Background*

The probation report included defendant's statement that he was diagnosed with bipolar disorder at age 12 and was prescribed Lithium, which he takes twice daily. He attributed his arrests to alcohol and drug abuse and expressed interest in substance abuse treatment. The probation report did not list defendant's mental health or alcohol abuse as mitigating circumstances. The probation department recommended defendant be sentenced to the middle term of three years on the assault count.

At the sentencing hearing in November 2024, the trial court stated it had received and considered the probation report and received some documentation from defense counsel regarding medications defendant was taking.[4]

---

[4]     This documentation is not in the record.

9

The prosecution requested the upper term on the assault charge. Alternatively, the prosecution joined the probation department's recommendation. Defense counsel requested the assault charge be reduced to a misdemeanor under section 17, subdivision (b), based on mitigating circumstances including "impairment by mental or physical condition that reduces [the] culpability in the offense." (See Cal. Rules of Court, rule 4.423(b)(2).) Counsel noted he had provided the trial court and the prosecutor with medical documentation that defendant "suffers, currently, as well as at the time, from bipolar one disorder, specifically bipolar one disorder with manic episodes."

Defense counsel further argued: "[F]acts alleged in this case by multiple witnesses including both Officer Rojas as well as the victim that indicated that, over the course of the alleged conduct, my client's mood bounced back and forth between being pleasant and being angry. This continuous and massive set of mood swings is at the core of mania[,] which is a specific symptom in the primary issue with bipolar disorder where a person can go back from elation to depression to anger and covering the entire spectrum of emotions in a small degree -- in no small degree, due to the impairment that bipolar disorder can cause a person's ability to regulate their emotions." Counsel concluded, "It is unquestionable, in defense's opinion, that [defendant's] bipolar disorder played a factor in the alleged offenses, and is consistent with all of the evidence before us."

Due to this and other mitigating circumstances defendant claimed—i.e., his alcohol dependence, that the victim initiated contact with defendant, and the prior driving under the influence conviction was over five years old—defendant requested that the trial court reduce the assault charge to a misdemeanor.

The trial court denied defendant's motion to reduce the assault charge to a misdemeanor under section 17, subdivision (b). The trial court asked defendant if he would like to be heard and defendant declined, but later said: "Every time I get a good job, I get off of Medicare, and then I get my medical care keeps lapsing and I almost get in trouble almost every time afterwards. It's like I keep running out of medication."

10

Defendant continued: "And then every time it seems I get off the medication, I lapse with drugs and alcohol. It's just over and over and over again." Defendant's mother stated: "Just he's struggled with mental health disorders. He was first diagnosed at the age of two. It's been a lifetime problem. So any help with drug rehabilitation is desperately needed."

After the parties submitted, the trial court said it had looked at the circumstances of the offense and the circumstances of defendant's history, background, and aggravating and mitigating circumstances. As to the driving under the influence charges, the court discussed defendant's multiple prior driving under the influence convictions and felony and misdemeanor convictions listed in the probation report and the numerous times defendant had been granted probation but failed to reform.

The trial court said: "So looking at the circumstances -- your personal circumstances as well as the circumstances of this offense, which again it was, I guess, now your sixth [driving under the influence charge] and an assault with a deadly weapon, a razor blade. All of that is very serious conduct. And based on -- and I respectfully disagree with the more charitable view that your counsel has offered. I think this conduct is serious. And given your record, I certainly agree with the probation report that probation should be denied. And it is denied." The court proceeded to impose the upper term of four years for the assault conviction.

B

*Analysis*

Defendant argues he made an initial showing sufficient to trigger the trial court's obligation to consider whether his psychological trauma qualified him for the low term presumption under section 1170, subdivision (b), because defense counsel provided documentation to support defendant's bipolar diagnosis and argued that his crimes were the result of "his psychological trauma attendant to his bipolar disorder." Defendant

11

claims that remand is required for the trial court to consider imposing the lower term under section 1170, subdivision (b).

As a threshold matter, the People contend defendant forfeited any claim under section 1170, subdivision (b)(6), because defendant "never requested that the trial court impose the lower term" under the statute. (See *People v. Tilley* (2023) 92 Cal.App.5th 772, 778.) However, because defendant alternatively contends that his attorney rendered ineffective assistance by failing to raise this issue, we exercise our discretion to reach the merits of whether the trial court abused its discretion by failing to consider the lower term under section 1170, subdivision (b)(6)(A). (*People v. Hardy* (1992) 2 Cal.4th 86, 209.)

Turning to the merits, section 1170, subdivision (b)(6)(A) provides: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

The fact defendant has a mental illness is insufficient alone to trigger application of section 1170, subdivision (b)(6)(A). "Section 1170, subdivision (b)(6) does not require the court to impose the lower term because of [the] defendant's mental illness, but for psychological trauma." (*People v. Tilley*, *supra*, 92 Cal.App.5th at p. 777; see *People v. Banner* (2022) 77 Cal.App.5th 226, 241 ["Psychological trauma must attend the [mental] illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)"].)

While defendant demonstrated he suffered from a mental illness, the record lacks evidence *psychological trauma* attended defendant's mental illness. *Banner* is distinguishable. There, the appellate court retroactively applied section 1170's lower term presumption and remanded the matter based on the defendant's demonstrated

12

mental illness and the widely understood link "between mental illness, psychological trauma, indigency, and crime." (*People v. Banner*, *supra*, 77 Cal.App.5th at pp. 240-241.) In *Banner*, the defendant was given the opportunity on remand to present evidence and make his case in light of the newly enacted standard and its likely applicability to him. (*Id*. at pp. 241-242.) Importantly, the appellate court found it notable that neither the defendant nor the court were incentivized to make the relevant inquiries required by section 1170, subdivision (b)(6). (*Banner*, at pp. 241-242.)

Conversely here, section 1170's presumed lower term was the law at the time of defendant's sentencing and *Banner* had already been decided. Thus, defendant and the court were already incentivized to explore defendant's circumstances in light of section 1170, subdivision (b)(6). Defendant does not point to any facts in the record or otherwise constituting psychological trauma other than his mental illness and its manifestations on his mood. This does not meet the psychological trauma standard of section 1170, subdivision (b)(6)(A), which requires more than the presence of a mental illness. (See *People v. Banner*, *supra*, 77 Cal.App.5th at p. 241.) Accordingly, the trial court did not err by failing to apply the low term presumption of section 1170, subdivision (b).

### III

### *The Abstract Must Be Corrected*

The abstract of judgment includes a court operations assessment of $160 and a conviction assessment of $120, which the trial court struck during its oral pronouncement of sentence. The abstract of judgment must be corrected to show these assessments were not imposed. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["Courts may correct clerical errors at any time, and appellate courts . . . have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts"].)

13

# DISPOSITION

The judgment is affirmed.  The trial court shall prepare a corrected abstract of judgment omitting the court operations and conviction assessments and forward a certified copy to the Department of Corrections and Rehabilitation.


　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　ROBIE, Acting P. J.


We concur:


/s/_____
RENNER, J.


/s/_____
BOULWARE EURIE, J.