Filed 5/6/22  P. v. Garcia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091451 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE015384) |
| v. | |
| MARIO JUNIOR GARCIA, | |
| Defendant and Appellant. | |

Defendant Mario Junior Garcia shot and killed his neighbor during a dispute.  A jury found defendant guilty of second degree murder and found true the allegation that he personally discharged a firearm causing death.  On appeal, he contends the trial court erred in admitting evidence of his involvement in a jail fight, and also claims the matter should be remanded for the court to consider reducing the gun enhancement.  We agree with the latter claim and remand for exercise of sentencing discretion; we otherwise affirm the judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

At the time of the incident, defendant was 19 years old and lived with his 23-year-old sister. Defendant frequently drove his car down the street at a high rate of speed and did "burnouts and donuts" near his house. Neighbors Talanoa Feinga (the victim) and his wife, and Feinga's brother, as well as neighbor David S. expressed concerns to defendant about his driving, as Feinga's and David's young children played in front of their houses.

Defendant also frequently hosted loud, well-attended parties that featured loud music, alcohol, and marijuana. During one such party on July 16, 2016, shots were fired. Bullets hit Feinga's house as well as his brother's and wife's cars. After the shots were heard, defendant, who was inside his home, came down the stairs from the second floor to the first floor with a gun and said, "No one is going to fuck with my house."

The next morning, there was glass from broken car windows and broken beer bottles around. Feinga and his brother went to talk to defendant about the damage; they pointed out that there were families and children living in the neighborhood and that each of the five bullets fired into the home and cars could have hit and killed someone.

On August 7, 2016, the Feinga family and Feinga's brother went to a barbeque. Feinga drank beer while he was cooking and had smoked marijuana that day.[1] The family returned home around 9:30 or 10:00 p.m. and went to sleep. After midnight, Feinga's wife was awakened by loud, wall-shaking music coming from defendant's house. She saw that David had texted Feinga's phone asking if he was awake. The wife woke Feinga and his brother and the two men met David outside.

---

[1] Feinga's blood-alcohol content at the time of his death was 0.12. His blood also tested positive for the presence of THC. At that level of intoxication, the ability to control anger would be impaired in some people.

Defendant was hosting another loud party; there was continuous car traffic and "herds" of young people going to and from the party. At 12:37 a.m., Feinga called 911 to report the party. Tensions escalated. Another angry neighbor, E.B., approached defendant's home, but people told him to "get the hell out of here . . . [¶] . . . or we're going to beat your ass."

Defendant came out of his house and a group of men fell in behind him. As many as 50 party-goers were in the street and some were on top of cars. As defendant walked down his driveway towards Feinga's house, the group of men formed a semicircle around him.

E.B. walked toward defendant, swearing at him, and Feinga, his brother, and David followed. Feinga told defendant: "Shut the party down. Get this shit out of here. We're tired of it." Defendant, Feinga and the other neighbors exchanged expletives, and defendant's sister yelled: "[H]e's only a little kid, leave him the fuck alone . . . whatever they do at their fucking house is their fucking problem." She also yelled, "Get your old asses out of here. Don't come over here. Y'all gonna get fucked up."

Without warning, defendant pulled out a gun and shot Feinga three times in the chest from between two and 11 feet away. Feinga died from his wounds. Neither Feinga nor the others in his group had any physical contact with defendant or had any weapons, although various party-goers' opinions differed on whether a fight between the two groups was imminent. Several witnesses stated that Feinga never threatened defendant, threw any punches, or lunged toward him. Other witnesses testified that Feinga appeared to want to fight, and that he charged or lunged at defendant. The time from the 911 call to the fatal shooting was approximately five minutes or less.

One party-goer said defendant seemed intoxicated. Another said defendant did not appear angry, told Feinga he did not want any trouble, and made efforts to turn down the music and move a car parked in front of Feinga's house to appease Feinga.

3

Defendant's sister testified that Feinga and the other neighbors were on the corner swearing at defendant's group and that defendant ignored them, which angered them. When the neighbors challenged defendant to fight, she told "them that they were grown men trying to fight a 19-year-old and to go home." She said that the neighbors then called her a "bitch" and threatened to "beat [her] ass." Defendant asked the neighbors why they were yelling at her. When the neighbors met defendant in the street, Feinga charged and lunged at defendant and defendant backed up, pulled out his gun, pointed it at Feinga, and told Feinga to back up.[2] The sister testified that Feinga then lunged again as if to hit defendant. She then heard a gunshot and defendant ran. She added that defendant was a "class clown" and as far as she knew had never been in a fight.

Another party-goer testified that she saw Feinga yelling at the sister. She added that Feinga and the other neighbors walked to the middle of the street and were threatening to beat up defendant, while Feinga taunted defendant to shoot him.

Defendant testified on his own behalf; he had seen Feinga between the July and August shootings on several occasions, and Feinga had said to him: "One more party. One more party. I be waiting for the one more party. The next time, my house ain't gonna be the one to get shot up." Another time Feinga said something about waiting to use his new gun and that defendant would have to "pay for this shit" he had caused due to his parties. Defendant said these comments prompted him to find Feinga on Facebook, where he saw "a lot of violent stuff" and "aggressive things" and quotes "pretty much saying he carries a gun." He was scared because "once I seen that, I knew [Feinga] was dangerous, and he has a gun, 'cause he was saying on Facebook, pretty much."

---

[2] Detective Jeffrey Griggs testified that he interviewed the sister the day of the shooting, and that she told him defendant said during his confrontation with Feinga, "I'm right here . . . I got my homies," meaning that he was not backing down.

Defendant testified that after the shooting at the July party, he prepared for the next party by hiding his gun on top of his refrigerator. He went outside at one point during the party and Feinga was mad about a car parked near his house. Defendant directed the car be moved and the music turned down. When a party-goer came in and told him that his neighbor was threatening his sister, he retrieved his gun and went outside. He claimed he would have run away were it not for the fact that his sister and friends were being threatened.

Defendant found Feinga, Feinga's brother, and E.B. screaming at his sister, telling her to end the party. He tried to defuse the situation by telling everyone to go into his backyard and have fun. In response, Feinga and the others called him names and told his sister to shut up when she came to his defense. When defendant told Feinga not to threaten his sister, Feinga became enraged and "just went crazy and got very angry." Feinga then started walking toward him while saying "What the fuck are you gonna do about it?" and calling him a "pussy." Defendant testified that he tried to calm Feinga down, but Feinga continued to advance. When Feinga was six to seven feet away, defendant pulled out his gun, pointed it at Feinga, and told him to back off and go home. Feinga made a motion as if he were going to hit him and said, "You gonna shoot me?" Defendant started to back up and then shot Feinga three times. As Feinga continued to advance on him, defendant dropped his gun and ran. He testified he shot Feinga because "pretty much, he's gonna kick my ass."

Feinga's wife testified that Feinga was neither violent nor a fighter and that the portions of Feinga's Facebook page presented in court were not representative of the page's general contents.

The jury found defendant guilty of second degree murder (Pen. Code, § 187, subd. (a)) and found true the allegation that defendant personally discharged a firearm causing great bodily injury or death (*id*., § 12022.53, subd. (d)). The trial court sentenced

defendant to 15 years-to-life in prison for the murder plus 25 years-to-life for the firearm enhancement.

Defendant filed a timely notice of appeal on February 4, 2020. The record was filed on May 27, 2020. After multiple extensions to the briefing schedule, the matter was fully briefed on December 6, 2021, and assigned to this panel on December 23, 2021. The parties waived argument and the case was submitted on April 12, 2022.

DISCUSSION

I

*Character Evidence under Evidence Code Section 1103*

Defendant first claims the trial court erred in admitting evidence of his participation in a jailhouse fight under Evidence Code section 1103[3] because it was not relevant to the jury's evaluation of his character and was inadmissible under sections 210 and 352, as well as admitted in violation of his federal due process rights. The Attorney General argues that defendant forfeited the claims when he failed to specifically object at trial and failed to include the video of the jailhouse fight in the record on appeal. Alternatively, the Attorney General argues that no error occurred, and any theoretical error was harmless.

We agree that defendant forfeited this issue and that the claim fails to persuade.

A. *Additional Background*

The prosecutor moved pretrial to exclude a photograph of Feinga holding two handguns as well as any questions or evidence regarding weapons found inside Feinga's home. During the hearing, defense counsel opposed the motion, stating that Feinga's gun possession was relevant to show his "behavior this night was so aggressive, so bullying that it is almost hard to believe he would do it if he didn't have a handgun. It helps

---

[3] Undesignated statutory references are to the Evidence Code.

6

understand his behavior and his attitude." Because there was no evidence that Feinga was armed when confronting defendant, the prosecutor argued that any evidence connecting Feinga to firearms was irrelevant and prejudicial. Defendant responded that Feinga's possession of the gun(s) corroborated defendant's assertion of intimidation by Feinga and mention of gun acquisition and use. The trial court excluded any reference to Feinga's possessing a gun as irrelevant but noted that it could become relevant if defendant testified.

The prosecutor also detailed the anticipated positive character evidence from several potential defense witnesses and requested the ability to introduce evidence of defendant's later participation in fights at the jail to rebut any such evidence were it introduced. The court reserved its ruling, stating: "The People are concerned about potential character evidence. Certainly, if [defense counsel] makes a strategic decision to offer character evidence, it opens the door to bad character evidence. So he knows when to wade into that and when not to. But things that happened, like jail write-ups and stuff might become relevant if he wades into that. So I think we'll just have to see." Defense counsel said he had not yet decided the issue, but understood what the prosecutor sought to introduce in rebuttal to any positive character evidence.

At trial, defendant testified that he was afraid of Feinga before the August shooting as outlined above. Prior to cross-examination, the prosecutor requested permission to ask defendant about a fight he was involved in at the jail, arguing defendant's testimony about Feinga's Facebook page constituted character evidence under section 1103 that would properly be rebutted by evidence of defendant's participation in a jailhouse fight. The prosecution's offer of proof was a videotape purportedly showing that defendant and another man pulled a fellow inmate out of his jail cell onto the second-floor walkway and immediately began to beat him while others joined in. The prosecution contended this incident was "relevant to show defendant's violent character, but also that he is a leader and not afraid to take actions into his own

7

hands. I think a lot of his testimony yesterday, also is kind of painting himself as a shrinking violet, and this would rebut that as well." The prosecutor argued that section 352 did not prohibit the video's admission as "this is a murder case and the conduct charged is much more serious."

Defendant objected and argued that there was no evidence he was a leader in the jailhouse fight; further, his actual involvement was minimal. He argued defendant's testimony regarding Feinga's Facebook page was not character evidence, as "it does not suggest that [Feinga] acted violently in the past or that he was predisposed to personally act violently" and that it wasn't "being offered to show aggressive conduct on the part of Mr. Feinga."

The trial court rejected defense counsel's assertion that the testimony was not evidence of Feinga's character, stating: "[T]hat's the whole position of the defense in this case, that Mr. Feinga was the aggressor and defendant had to act in defending himself. So I don't know how you can't call it character evidence. He's introducing Mr. Feinga's trait for violence and also asking the jury to find that because he knew that, he was reasonable in defending himself. And also, the second purpose of that is that Mr. Feinga acted in conformity with that character that night. That's the only reason it was -- I mean, that's the glaring reason that it's – it's out there." The court continued and stated that defendant opened the door to whether "[Feinga] acted in conformity with what [defendant] has said, someone who's violent, who has violent posts. 'A lot of violence,' he said that more than once. So . . . I disagree with you that it's not character evidence. I think it is character evidence. And I do think it's opened the door to the prosecutor being able to rebut that, either by good character of Mr. Feinga or character for nonviolence or with [defendant's] character or a specific instance of conduct of violent character – violent conduct."

After trial resumed, defendant introduced printouts of Feinga's Facebook posts that he testified caused him to be afraid of Feinga. He also affirmatively introduced evidence of his assault on his fellow inmate, testifying that the inmate was causing problems and making racist statements about Mexicans. Defendant explained that he tried to discuss the matter with the inmate and the inmate swung at him, then he and others started to fight with the inmate and the inmate ran out of his cell during the fight. He added he did not inflict any serious injuries, merely a kick and perhaps a scratch.

The prosecutor questioned defendant about the assault and showed him (and the jury) the videotape, which was marked as Exhibit 35 and admitted into evidence. Defendant acknowledged that he failed to tell jail staff that he was acting in self-defense.

B. *Analysis*

Where a person's character or a trait of his character is at issue it may be proven by any permissible evidence including opinion testimony, evidence of reputation, or evidence of a specific instance of the person's conduct. (§ 1100.) Evidence of a person's character, however, is generally not admissible to prove his conduct on a specific occasion, but there are exceptions to that general rule. (§ 1101, subd. (a).) A defendant may introduce evidence of a victim's character or a trait of his character to provide his conduct on a specific occasion (except as limited in sex offense cases). (§ 1103, subd. (a)(1).) Where a defendant has introduced character evidence to prove a victim's conduct, the prosecution may introduce such evidence to rebut the evidence introduced by the defendant. (§ 1103, subd. (a)(2).)

The admissibility of this evidence has two components: (1) whether the challenged evidence has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action" as directed by section 210 and, if so, (2) whether the trial court abused its discretion under section 352 in finding that the probative value of the evidence was not substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice. (§§ 210, 352.)

9

Although we conclude the record is sufficient to review the claim in this instance, we agree with the Attorney General that by failing to transmit the exhibit at issue defendant risked forfeiting his challenge to the trial court's findings based on the omitted exhibit.  (See Cal. Rules of Court, rules 8.320 & 8.224; *People v. Chubbuck* (2019) 43 Cal.App.5th 1, 13 ["Absent an adequate record, we presume the trial court's judgment was correctly decided based upon the evidence before it and we deem the issue forfeited"].)  Further, defendant has forfeited his evidentiary and constitutional claims of error because he did not object under sections 210 and 352 in the trial court.  (See *People v. Partida* (2005) 37 Cal.4th 428, 435 [appellant may not argue that the court should have excluded the evidence for a reason different from his trial objection]; *People v. Riggs* (2008) 44 Cal.4th 248, 292 [distinct federal due process claim must be first raised in trial court].)  As we have described, he argued to the trial court only that evidence of the fight was not character evidence.  On appeal, defendant does not dispute this was character evidence or that the law allows for rebuttal evidence regarding defendant's character.  (See § 1103, subd. (b).)  Indeed, he characterizes the evidence of the fight as "violent character evidence."  He now argues that the fight was irrelevant because it happened 18 months subsequent to the shooting and could not provide any insight into defendant's character at the time of the murder.  This claim is forfeited.[4]

---

[4] To the extent defendant appears to raise ineffective assistance of counsel in his reply brief, he may not do so for the first time in reply; further, the claim is not properly headed and argued.  For both of these reasons, we decline to consider it. (See *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4 [the appellant must present each point separately in the opening brief under an appropriate heading or it is forfeited]; Cal. Rules of Court, rule 8.204(a)(1)(B).)

In any event, defendant's claim fails on the merits. Defendant testified that he shot Feinga in self-defense when Feinga charged at him. He explained as justification that he subjectively believed that Feinga was aggressive, violent, and carried a gun; the Facebook photos of an armed Feinga supported this view.

"[E]vidence of subsequent crimes may bear on a defendant's character at the time of the charged offense." (*People v. Cordova* (2015) 62 Cal.4th 104, 133; *People v. Medina* (2003) 114 Cal.App.4th 897, 903; *People v. Shoemaker* (1982) 135 Cal.App.3d 442, 447-448.) The evidence of the fight provided an insight into defendant's approach to conflict resolution during his interactions with Feinga--although perhaps not substantial, this insight was not irrelevant. Defendant claimed he was a reasonable, peaceful man who ended up defending himself against Feinga, who was the violent aggressor. Despite defendant's claim that he was also defending himself during the jailhouse fight, defendant's participation in yet another conflict suggested he was not a mere peaceful observer. The jury was free to determine defendant's role in each situation and to decide whether his actions in jail demonstrated his character for violence.

We acknowledge there is a point at which "evidence of [a person's] character becomes too remote to have any probative value and thus becomes irrelevant," (see *People v. Shoemaker, supra,* 135 Cal.App.3d at p. 448, fn. 4), but this is not the situation here. The passage of 18 months between the shooting and the fight is not significant enough to erode all relevance. Indeed, defendant does not point to any evidence that his character changed over the relevant time period or reason such a change might have occurred. (*People v. Cordova*, *supra*, 62 Cal.4th at p. 133.) The evidence was not too remote to be probative.

Nor was the evidence unduly prejudicial to defendant; his testimony and the video as described on the record were far less inflammatory than the testimony about the charged incident, and not so outrageous as to risk inflaming the passions of the jury against defendant. (See *People v. Karis* (1988) 46 Cal.3d 612, 638 ["prejudice" referred

11

to in section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant while having very little effect on the issues].)

Finally, as defendant's due process claim and prejudice analysis is based on the premise that the evidence was improperly admitted, we need not address them.

II

*Firearm Enhancements*

Defendant claims the trial court erred at sentencing by not considering reducing the Penal Code section 12022.53, subdivision (d) firearm enhancement to a lesser charged enhancement under subdivisions (b) and (c).  He adds that the trial court should have considered his youth in making its decision not to dismiss the greater enhancement. Because the law has been clarified since the time of defendant's sentencing and it is now clear the trial court has discretion to dismiss or reduce the enhancement as defendant asks, we shall remand for informed exercise of discretion.  Defendant may renew any of his previous arguments seeking dismissal of the greater enhancement as well as make any new arguments for dismissal or reduction on remand.

A.  *Additional Background*

Prior to sentencing, defendant filed a motion requesting that the court either strike the firearm enhancement at issue or impose a lesser included enhancement, relying on *People v. Morrison* (2019) 34 Cal.App.5th 217, which held the trial courts have the authority to do as he proposed.

The trial court declined appellant's request to strike the enhancement and also declined to consider imposing instead a lesser enhancement, disagreeing with the holding in *Morrison* and opining that such consideration was impermissible.

B.  *Analysis*

Penal Code section 12022.53 provides for a 10-year enhancement for the personal use of a firearm under subdivision (b) ; a 20-year enhancement for the personal and intentional discharge of a firearm under subdivision (c); and a 25-years-to-life

12

enhancement for the personal and intentional discharge of a firearm causing great bodily injury or death under subdivision (d).

Effective January 1, 2018, the Legislature enacted Senate Bill No. 620, which amended Penal Code section 12022.53, subdivision (h) to provide: "The court may, in the interests of justice pursuant to [Pen. Code] Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." A trial court's refusal to dismiss a Penal Code section 12022.53 enhancement is reviewed under the deferential abuse of discretion standard. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116.) "When being sentenced, a defendant is entitled to decisions made by a court exercising informed discretion. [Citation.] A court acting while unaware of the scope of its discretion is understood to have abused it." (*People v. Tirado* (2022) 12 Cal.5th 688, 694 (*Tirado*).)

In *Morrison*, the appellate court held that amended Penal Code section 12022.53, subdivision (h) not only gave a trial court the authority to strike or dismiss a firearm enhancement, but also to impose a lesser firearm enhancement. (*People v. Morrison*, *supra*, 34 Cal.App.5th at p. 222.) While defendant's case was pending, our Supreme Court concluded that "*Morrison* correctly described the scope of a trial court's sentencing discretion under [Pen. Code] section 12022.53." (*Tirado*, *supra*, 12 Cal.5th at p. 697.)

The high court held trial courts are not categorically prohibited from imposing a lesser enhancement, either charged or uncharged, if the prosecution has charged the greater enhancement and the facts supporting the lesser enhancement have been alleged and found true. (*Tirado*, *supra*, 12 Cal.5th at p. 697.) Thus, under the Penal Code section 12022.53 statutory framework, it is now clear that trial courts are permitted to strike a subdivision (d) enhancement found true by the jury and to impose a lesser statutory enhancement instead. (*Tirado,* at p. 700.)

Here, the prosecution alleged defendant violated Penal Code section 12022.53, subdivisions (b), (c), and (d) and the jury was presented with and found true the subdivision (d) enhancement allegation. Thus, as explained by *Tirado*, the trial court had the authority to impose a lesser firearm enhancement in the proper exercise of its discretion in this case. The record shows the trial court was not aware of its discretion in this regard; accordingly, we shall remand the case for reconsideration of defendant's request to dismiss or reduce the Penal Code section 12022.53, subdivision (d) firearm enhancement. (See *People v. Downey* (2000) 82 Cal.App.4th 899, 912.) Defendant may renew any of his previous arguments seeking dismissal of the greater enhancement as well as make any new arguments for dismissal or reduction on remand. We express no opinion as to how the court should exercise its discretion on remand.

DISPOSITION

The matter is remanded for the trial court's exercise of discretion as explained by this opinion. The judgment is otherwise affirmed.

/s/
Duarte, Acting P. J.

We concur:

/s/
Renner, J.

/s/
Krause, J.

14